Skeed, J.,
delivered the opinion of the court:
The facts of this case, as we have gathered them from this voluminous record, need not be given in detail in order to a determination of the questions presented, nor is. it practicable, under the pressure that usually attends the closing labors of a term, that we should elaborate our views upon the various propositions of law pressed in the argument. A general statement of the facts, with our conclusions as to the equities of the parties, must suffice, and even this necessary statement extend this' opinion to great length. ~-
In the spring of 1869, about the 1st of April of that year, after a previous execution of articles, the complainants, who are G. W. Telford, W. B. Glaze, and G. W. Nelson, with the defendants, J. IT. Smith and Philip Harmon, began a commerical partnership at the town of Broylesville, in the county of Yvrashington.
The captital stock of the concern was $8,000, subscribed and paid in the proportions following: The complainants, Telford, Glaze, and Nelson, paid $1,000 each; the defendant, Smith, $8,000, and the defendant, ITarmon, $2,000. The individual partners were to enjoy ratably, the profits of the venture, according, to the amount of capital paid in by each. The style of the firm was Smith, Glaze & Co., and it was limited to three years. In 1870, defendant Harmon, withdrew his capital subscribed, of $2,000, leaving the capital of the concern $6,000.
According to the articles, it was agreed that defendant, A. A. Broyles., should be employed at a salary, as merchant and manager of the concern. He became the purchasing agent, and also the general bookkeeper and superintendent *523 of sales. In August, 1870, tbe defendant, Smith, sold his interest in the concern to Adam A. Broyles, whose purchase seems to have been in the name and for the- benefit of his wife. The enterprise was not a success, but turned out to be a disastrous failure, and when the final accounts came to be cast, it was ascertained that the losses so far swallowed up the profits that the firm was left with a heavy incubus of debt, and with little else than a mass of notes and accounts upon insolvent persons, as its resources for payment.
The defendant, Adam A. Broyles, was arraigned and accused as the author of these misfortunes, brought about, in the opinion of the firm, by his negligence in over-purchase, contrary to instructions; in indiscriminate credits extended to insolvent persons, in disobedience, to the repeated admonitions of the members of the firm.; in converting the moneys and assets of the firm to his own individual uses, and in general faithlessness and negligence in the management of his trust.
When, in August, 1870, defendant, Smith, sold his interest in the firm to the defendant, Broyles, the former demanded of his co-partners that he be permitted to sever his connection with the firm, and that his vendee be substituted to all his rights and liabilities as a member thereof.
This was flatly and persistently refused, and Smith continued in active co-operation in looking after the interests of the firm, while on the other hand, his vendee continued as he had begun, the active manager, agent, and merchant of the concern, until its final collapse and dissolution. This attitude of things was not regarded and treated by the complainants, or by Smith, or by his vendee, as imterf ering with the sale by Smith to Broyles. On the contrary, it was treated and regarded by all parties as a valid sale, the only purpose of the complainants being to hold the defendant, Smith, who was a man of means, as well as an efficient and active man in business, to all his responsibilities, as a member of the firm, and to refuse to accept his vendee as a substitute.
*524 The rights of the purchaser, Broyles, in the benefits of his purchase were not- intended to he affected, and, indeed, as a matter of law, were not in the least degree affected by this refusal. He had bought Smith’s interest in the goods and in the profits of the establishment, and these he was entitled to absolutely, upon final account, and certainly his rights in this respect were not, in any degree, impaired by the fact that Smith was only to continue as his co-adjutor in managing the business, and continue to perform his duties and obligations to his co-partners, according to the terms of the articles. The consideration agreed to be paid by Broyles to Smith, for his interest, was something over $3,500, and to secure this, Broyles transferred, as collateral to Smith, certain notes designated in the pleadings as the Blair notes, which amounted, when finally collected by Smith, to about $8,000. In the original articles of -sale by Smith to Broyles, it wras stipulated that out of the first collections on the Blair notes, Smith was to retain the amount of purchase money agreed on. This sale was on the 3d of August, 1810. On the 4th of April, 1872, Broyles executed to Smith the following instrument:
“I, A. A. Broyles, promise and bind myself to pay J ohn E. Smith, any moneys that he may have to advance, with ten per cent, interest, for the firm of Smith, Glaze & Co., on the three thousand dollars capital invested in said firm, and sold to me, but still held as one of the firm, and to be held out of the moneys when collected of the Blairs, that lias not been heretofore transferred by me to the said John F. Smith, by sale and deed of trust.” This instrument was acknowledged by Broyles for registration, and was registered on the 10th of April, 1873, after the dissolution of the firm of Smith, Glaze & Co. And during the whole interval the status quo of the original trade between Smith and Broyles had remained as it was at the beginning, and Smith’s and Broyles’ relation to the firm had continued without further question. It was 'understood and agreed among all the parties that a part of the Blair notes, when *525 collected, was to be applied in discharge of an old debt of Broyles’ known as the Tlale debt, for which the firm of Smith, G-laze & Co. had become bound. This, upon final collection of the Blair notes, was so applied, and the rest retained by Smith in discharge of the purchase price for the stock in trade so purchased by Broyles, and as indemnity for Smith’s losses by the film, which the proof shows to have been greatly in excess of the amount of said indemnity. It appears that during the progress, of the partnership business, the defendants, Broyles and Harmon, after the retirement of the latter, had established a tan yard near to the business house of Smith, Glaze & Co., and it is charged that much of the means required therefor was of the firm assets of Smith, Glaze & Co., appropriated without authority.
In IS(35, long prior'to the partnership, the said Adam A. Broyles, being largely embarrassed, executed a deed of trust to secure his creditors, and it is charged that the moneys of the firm were used by Broyles, to some extent, in discharging the trust debts, and that a part of the trust property was diverted and misappropriated by Broyles, in the course of the administration of said trust.
The original bill is filed to hold A. A. Broyles liable, as agent, for his misconduct, whereby losses resulted to the firm; to hold Broyles and Harmon liable for their joint indebtedness and misfeasance; to hold Harmon to account for his indebtedness to the firm; to hold Smith to account for the excess of the Blair notes, on the theory that he was but a trustee for the firm; to obtain satisfaction for the residue of the complainant’s decree against Broyles, out of the trust -property, and, incidentally, to have it declared that the beneficiaries have so conducted themselves as to waive their security under the trust deed, or to substitute the firm to their rights to the extent that the firm assets have paid the trust debts.
To the original bill, the trustee and all the creditors in *526 the trust- deed are made parties defendant. They are called upon to-answer and establish their respective debts.
On May 25th, 1875, the defendant, Broyles, filed his answer as a cross-bill, for the purpose, among others, of having the contract with Smith set aside and annulled, on the ground of ai failure of consideration, and to compel Smith to refund the whole amount of the Blair collections in excess of the amount of the Hale debt referred to above.
' The chancellor reordered a decree against Adam A. Broyles, (1) on his note and accounts due to the firm; (2) on account of assets of the firm used in erection of a house and shoe shop; (8) for an account of assets lost by reason of his violation of instructions and known wishes of the" firm as to credits and purchases, and on account of negligence in the management of the business of the firm; (4) an account for goods or moneys received by him and not charged or reported.
He decrees against Broyles and Harmon for the amount of their notes to the firm, and funds and assets of the firm used in sinking and improving the tan yard, and for amount of firm assets in said tan yard business not returned, and the profits arising from said business.
He decrees against Harmon on his debts to the firm of Smith, Glaze & Co., and on his liabilty for violation of partnership agreement — for ail which an account is ordered.
He decrees against defendant, Smith, on Broyles’ cross-bill, that said sale and indemnity contracts are void for want of consideration, and substitutes the firm of Smith, Glaze & Co. to all the rights of Broyles in his recovery against -Smith on account of the excess of said contract price and indemnity over and aboye the amount of the Hale debt, -and subjects it, in behalf of the firm, to any recovery against Broyles, or Broyles and Harmon, and declares a lien on the tan yard property in favor of the firm.
He decrees against Broyles for all his interest, legal or *527 equitable, in the property conveyed in trust, after exhaustion of all other funds and interests of Broyles, held liable as above.
He decrees that the firm be substituted to the rights of the creditors under the trust, with three exceptions, to the extent of all sums Broyles has used of the firm assets in paying said trust debts, and orders an account thereof.
He decrees against the trust creditors to the extent of all trust funds received by Broyles with the consent of said trust creditors, holding the trust property to that extent released, and that the firm to that extent have a right to share in the proceeds of said trust property.
As to all the trust creditors who have failed to answer, and present and establish their claims, the chancellor held that they had relinquished their security, and that their said debts are to be postponed to the rights of the firm of Smith, Glaze & Co.
The decree holds, also, that the debts of the Crookshanks’ who answered this bill, and presented their debts, have no priority over the debts of the firm, upon the'ground, as intimated, that they belong to that class of creditors who have, by their conduct, waived and abandoned their interest under the trust.
The debts of James E. Broyles, Jacob E. Broyles, and I'annie JR. Hunter, are specially allowed to share in the trust.
Erom this decree only Adam A. Broyles, J. E. Smith, and tire Crookshanks’ have appealed. And as these several appellants only impeach and assail the decree so far as it affects themselves respectively, we are- only called upon to consider their equities in the cause, and are relieved from the necessity of discussing other questions raised upon the pleadings and the proof; and notably among them, the disposition the chancellor has mad© of the rights and interests of the creditors under said trust.
In regard to the sweeping decree against Broyles, and *528 Broyles and Harmon, we hold, that in the main, it is correct. Upon the most elementary principles of the law which governs the relation of principal and agent, we see no avenue of escape for the defendant Broyles, under the facts disclosed by the record. The only correction which we think proper to engraft upon the decree of the chancellor, as to the accounts ordered by him against the defendant Broyles, is, as to the generality and ambiguity of the terms of that part of the decree which directs an account of the amount of the firm assets lost on acount of Broyles’ violation of instructions and the well-known wishes of the firm, and also on account of his negligence and other wrongful acts in the management of the business of 'the firm, and the amount lost to the firm by reason of the said Broyles selling goods of the firm to persons not good and solvent in law.”
We think this part of the decree too speculative and general, and unless the margin of inquiry be restricted by some definite rule, an account under it may result in great injustice to the defendant. One of the witnesses undertakes to' explain what is understood, in popular parlance, by the expression, "solvent in law,” as referring to persons out of whom money can be made by execution.
We have no objection to this form of speech, and think it appropriate enough. But upon a careful scrutiny of the proof in this record, we are constrained to believe that under the doctrine of ratification, many of the acts complained of, by which these great losses have been suffered, may be excused. ’We do not say that this is so, but that it may be so, and the generality of this part of the decree must be so modified as to give the defendant the benefit of this doubt. As a matter of fact, it does, appear that Adam A. Broyles undertook the management of this concern with full authority to sell goods on credit, and that he continued to do so under the eye and constant surveillance of some one or more members of the firm, up to *529 the 29th of February, 1872, when, for the first time, he was admonished and forbidden in any positive way, by resolution adopted by the firm, to sell on credit. He was no w and then warned, it is true, by some1 one member of the firm, as to individuals, but the general authority to sell on credit was continued and his sales acquiesced in, except as to individual cases, up to date of this action by the firm. These gentlemen, the members of the firm, some one or more of them, were almost constantly about the store. Some of them exhibited commendable interest and industry in looking into its affairs. They had monthly meetings, just as a corporation, and kept regular minutes of their proceedings.
It is scarcely to be believed that they did not know of all these things; and, if with this knowledge; they still suffered them to go on, then the negligence of the agent is condoned by the ladies of the principals.
These observations apply as well to the complaint that the defendant exceeded his authority in making purchases, and in executing notes on account thereof. It is said that he ought to be held liable for an abuse; of the credit of the firm by often running them in debt in an amount exceeding $3,000 at one time, which was in violation of his agency. It is scarcely to be credited that the invoices of these purchases did not come to the- knowledge of the firm, or some member of it, from time, to tipie, as the purchases were made; and even if this improbable thing be true, it is certain that the firm got the benefit of them as adding so much to their stock. This part of the decree, in view of the indefinite basis it lays down for taking the accounts in these particulars, we must hold to be erroneous. The defendant, Broyles, having the general authority to extend credit to the customers of the house, cannot be held as an insurer of the solvency of all its customers. If forbidden to sell to insolvent persons, then it must be shown that he was guilty of bad faith in selling to persons *530 notoriously insolvent at tbe time of tbe sale. If be continued to sell on a credit after be wras positively forbidden to credit any one, then any losses on that account would be legitimate subjects of account. In regard to tbe charge of bis having incurred debts for tbe firm in excess of bis authority for goods purchased, etc., if tbe firm knew of such transactions and ratified them, or if they got tbe benefit of the merchandise thus purchased, then it would be unconscionable to bold tbe agent liable. We come now to consider tbe question arising on tbe cross-bill as to tbe contract between Broyles and defendant Smith. It is held by tbe chancellor that this contract of sale and indemnity was of no effect, and void for want of a consideration to support it. And it is insisted on tbe part of tbe complainants that Smith being still burthened with all tbe obligations and responsibilities of a partner in the, firm of Smith, Glaze & Co., bad no right to take indemnity for bis own losses in exclusion of tbe firm. Tbe last proposition must turn upon a solution of tbe first. If Smith had a right to sell, he bad a right to contract for indemnity. That be bad this right to sell, provided he did not violate tbe good faith imposed upon him by tbe articles, and by tbe law itself, as to matters about which the instrument is silent, we have no doubt. We understand the fact to be clearly established, that each of tbe members of the firm of Smith, Glaze & Go. recognized tbe contract between Broyles and Smith as one that entitled Broyles to Smith’s share, upon a final adjustment. And it is most manifest that the defendant, Broyles, SO' recognized and treated it as late as the spring of 18Y3, when be acknowledged tbe indemnity instrument for registration. As to him bis repudiation comes too late, and cannot for a moment be entertained in a court of conscience. It is true that one partner cannot, without tbe consent of tbe other members of the firm, introduce a stranger into tbe firm, but no partner is precluded from selling what is bis own, and if be does sell *531 bona fide, the purchaser has all the rights of the party selling out in the surplus profits of the concern. Collyer on Part., 94; Pars. Cont., 131; Pars. Part., 168, 169; [Matthewson v. Clarke], 6 How., 139 [47 U. S., 139-12 L. ed., 377]; Lind. Part, 483 et seq. There can be no doubt that the defendant, Broyles, succeeded by his purchase to all that he contracted for, the rights and interests of the' defendant Smith, in the net gains, profits, and products of the concern, and these he may enforce in a court of equity. If, when he found out in the summer of 1870, that the other members, while recognizing his full rights, yet would not consent that Smith should sewer his connection with the firm, he had promptly disaffirmed the contract, then he would stand in a court of equity in a better attitude. But this he did not do, but he clung to his contract for better, for worse, through the years 1870, 1871, and 1872, and even to the date of the registration of the instrument of indemnity, in 1873, still hopeful, no doubt, that he might reap a golden harvest from the profits of the concern. How could he be injured, or the benefits of the contract be in the slightest degree impaired by Smith’s continued labors in behalf of the firm? His own interests were as well represented by his own active participation in the business, as if Smith had been permitted to withhold his co-operation and retire.
We hold that such a sale is not unlawful, and that, in no sense, was the uberrima fides that belongs to the relation of partners, violated by these transactions, whatever might have been the effect if Smith had arbitrarily abandoned the firm to its fate. And we hold that having the right to sell his interest in the concern, and being still bound for his proportion of the losses, he had a perfect right to indemnify himself against those losses.
The undoubted understanding of the parties when the contract was first made, was that Broyles was in all re *532 spects to be the substitute of Smith in his duties and obligations to the firm.
When this was found to be impracticable, it would have been a fraud upon Smith to compel him to take upon himself the future losses that ought to fall upon Broyles— without consideration — and yet let Broyles enjoy all the profits. It turns out that all parties have lost by this venture, but this cannot change the legal aspect of the case. -It results that the decree in this respect must be modified.
The decree must be modified in another respect. The defendants Nancy Ann and Sarah K. Grookshanks’, were summarily, and, as we think, without good reason, excluded from the benefits of Broyles’ deed of trust. This deed cannot be treated as a fraudulent one. The chancellor has adjudged it valid by recognition of the rights of certain creditors secured by it, and in this all parties have acquiesced.
The decree touching the interests of the Grookshanks as creditors, was as follows: "And as to the claims of respondents Nancy A. Grookshanks and Sarah K. Grook-shanks, the chancellor is of opinion, and doth declare, that said claims .have a priority of right over Smith, G-laze & Co., but, by their action in the premises, said respondents have waived and relinquished their security under said trust deed, and must, therefore, look to said Broyles personally for the satisfaction of their said debts.”
In another part of the decree, the chancellor had excluded other creditors, "because, with their consent, and by their connivance, perhaps, the defendant Broyles had, for a long time, been permitted to retain the land conveyed, and enjoy the rents and profits, and to release his equitable interest in a part of the property for a consideration, with the assent of said creditors and their agents.” These reasons for excluding the defendants, Grookshanks, certainly do not exist, nor do they fall within the category of *533 any other creditors who have been excluded. They answered the hill and presented tlieir claims. They show, by the proof, that they had nothing whatever to do by knowledge, consent, or otherwise, with the transaction about the trust property, on account of which other creditors were excluded.
But it is argued that they suffered a renewal of their notes, and have thus waived their interests in the trust; but they prove that the renewal was with the express understanding that the claims were to continue a charge upon the property conveyed by the trust. The execution of a new note for an old one secured by mortgage, does not amount to a waiver or abandonment of the security, unless such be shown to be the intention of the. parties.
The rule is thus stated: If a note be secured by a mortgage, and the mortgagor, at its maturity, give a new note, which is regarded by him and the mortgagee as a renewal of the old note, and even repeat this many times, still the original debt is not paid so as to discharge or affect the mortgage, nor will that be discharged, unless by payment, in money, of the first note, with interest, or some other payment which the parties agree upon as satisfying the mortgage. 2 Pars. Bills and Notes, 150, 154; Lover, Strouse et al. v. Bessenger et al., MS., Knoxville, 1876 [since reported in 9 Bax., 393].
We hold that this renewal did not, in any manner, affect the rights of these parties under the deed of trust; that upon no other ground can the rights of these two appellants in the trust be questioned, and that in this respect, also, the decree must be modified; but in all other respects than as here indicated, the decree will be affirmed, and the cause remanded for further proceedings under the decree of the chancellor as modified by the principles of the opinion.