PITTSBURG COAL CO. *v.* SOUTHERN ASPHALT & CON-
STRUCTION CO.

## (*Jackson.* April Term, 1917.)

1. **MUNICIPAL CORPORATIONS.** Public Contract. Lien-
Material furnished. Coal. Bonds.

Coal furnished to a construction company engaged on a public
contract for use in operating its engines' boilers and the other
machinery is material used in the performance of a contract
within Acts 1899, chapter 182, providing that no contract shall
be let for any public work until the contractor shall execute a
bond to pay for all the material and labor used in such contract,
and that any laborer or furnisher of material may bring an
action on such bond. (*Post, pp.* 156-160.)

Acts cited and construed:  Acts 1899, ch. 182;  Acts 1891, ch. 98;
Acts 1883, ch. 220.

Cases cited and approved:  Johnson v. Starrett, 127 Minn., 138;
Shultz v. Quereau Co., L. R. A., 1915 E., 986; Standard Boiler
Works v. Nat. Surety Co., 43 L. R. A. (N. S.), 162; Sampson Co.
v. Commonwealth, 202 Mass., 326; Thomas v. Commonwealth,
215 Mass., 369; Powder Co. v. Railroad, 113 Tenn., 382; Luttrell
v. Railroad, 119 Tenn., 492.

2. **MUNICIPAL CORPORATIONS.** Public contract. Bonds.
Liens. Privity.

Under Acts 1899, chapter 182, protecting laborers or furnishers fo
material on public works, and providing that any laborer or
furnisher may bring an action on the contractor's bond and
have a recovery in his own name, an action by a furnisher of
coal to a contractor against him and the surety cannot be de-
fended on the ground of want of privity between plaintiff and
surety. (*Post, p.* 160.)

Case cited and approved:  Templeton v. Nipper, 107 Tenn., 548.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —FRANCIS FENTRESS, Chancellor.

R. P. CARY, for appellant.

CHAS. M. BRYAN, for appellee.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This bill was filed in the chancery court of Shelby county against the Southern Asphalt & Construction Company, principal, and the Interstate Casualty Company, surety, to recover an unpaid balance of $927.74 for coal furnished to the construction company while it was engaged in the building of what is known as Huling avenue interceptor, which was a sewer in the city of Memphis. The contract between the city and the construction company stipulated that:

The "contractor agrees to pay punctually the workmen and the persons furnishing materials on the work, and before receiving final estimates shall give satisfactory evidence to that effect. The city retains the right to withhold from any sums due the contractor such amounts as may be necessary to meet all unpaid claims for labor and materials, but

156          TENNESSEE REPORTS,     [138 Tenn.

Pittsburg Coal Co. v. So. Asphalt & Const. Co.

failure on the part of the city to secure such evidence or to hold such amounts shall not affect the liability of the contractor or his bondsmen."

The city required the contractor to make a bond in the penal sum of $77,500, with the Interstate Casualty Company as its surety. The bond stipulated that:

"Should the said Southern Asphalt & Construction Company fully and truly perform all the terms and provisions of said contract, on its part, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

In the construction of the sewer the construction company used engines, boilers, and other machinery for the purpose of making excavations and otherwise used in the construction of the work. It is stipulated by counsel:

"That said coal was used for the purpose of operating the engines, boilers, and other machinery of the defendant, Southern Asphalt & Construction Company, which were employed by it in the performance of its contact with the city of Memphis, as set out in paragraph II of the bill, and that such contract could not have been performed without the coal so used by it."

The question for decision is whether the coal furnished under the facts stipulated is material used in the performance of the contract within the meaning of chapter 182, Acts 1899. The act is entitled "An act

to protect laborers and furnishers of material on public works." By the first section it is provided that:

"Hereafter no contract shall be let for any public work in this State by any city, county, or State authority until the contractor shall first execute a good and solvent bond to the effect that he will pay for all the materials and labor used in said contract in lawful money of the United States, provided that this act shall not apply to contracts under $100."

By section 2 it is enacted:

"That any laborer or furnisher of material may bring an action on such bond, and make recovery in his own name, upon giving security or taking the oath prescribed for poor persons as provided by law."

We are of opinion that the coal furnished to the contractor under the circumstances stipulated by counsel is material used in the performance of the contract within the meaning of this act. If the excavation done in the performance of the contract were with pick and shovel in the hands of laborers it would have fallen within the express terms of the act because the act requires that the bond shall cover "labor used in said contract." But the contractor and the city saw proper to use modern appliances for their own benefit instead of day labor in making the excavations, hoisting, and the like. The coal that furnished the power by which the machinery was operated was as much material used in the contract as the labor

158      TENNESSEE REPORTS,   [138 Tenn.

Pittsburg Coal Co. v. So. Asphalt & Const. Co.

of men for which it was substituted. The fact that modern machinery enables contractors to perform their contracts with greater facility than the old method of hand labor should not deprive those who furnish materials to the contractor to be used in the performance of the contract of the protection of the law. The machinery, appliances and things used by which modern contracts are performed are different from those with which they worked at an earlier day, and it is likely that as time advances improvments will be made, and other appliances will come into common use which will supersede those now employed by contractors. The statute under consideration was passed for the protection of laborers and furnishers of material on public works, and the inquiry should not be limited to the method by which the contract is performed.

We are cited to many cases from other jurisdictions, but all of them construe mechanic's lien statutes. The statute under consideration here is not a mechanic's lien statute, and has no application except in cases of public works. We think its true construction is as given herein. The following cases hold that coal used to generate steam is lienable under the mechanic's lien law: *Johnson* v. *Starret*, 127 Minn., 138, 149 N. W., 6, L. R. A., 1915B, 708, and cases there cited. See note to *Shultz* v. *Quereau Co.*, L. R. A., 1915E, 986, and the note to *Standard Boiler Works* v. *National Surety Co.*, 43 L. R. A. (N. S.), 162. However,

the contrary view is taken by the court of appeals of New York in the *Shultz Case,* supra, and the supreme court of Massachusetts in *Sampson Co.* v. *Commonwealth,* 202 Mass., 326, 88 N. E., 911; *Thomas* v. *Commonwealth,* 215 Mass., 369, 102 N. E., 428.

The view is taken in these last cases that before materials should be held to fall within the mechanic's lien law they should be used directly in the excavation of the earth. In these cases coal furnished to a contractor to generate steam for power is held not to be lienable.

But, as stated, the foregoing cases are not of controlling authority in this case, nor are our cases of *Powder Co.* v. *Railroad,* 113 Tenn., 382, 83 S. W., 354, 67 L. R. A., 487, 106 Am. St. Rep., 836, and *Luttrell* v. *Railroad,* 119 Tenn., 492, 105 S. W., 565, 123 Am. St. Rep., 737. The cases last referred to had under consideration chapter 220, Acts 1883, as amended by chapter 98, Acts 1891, giving a lien upon railroads to any person who has assisted in grading of its roadway, the construction or repair of its culverts and bridges, the furnishing of cross-ties, the laying of its tracks, the erection of its depots, platforms, wood or water stations, section houses, machine shops, or other buildings, or for the delivery of material for any of these functions. These statutes are essentially different from the one under consideration, and were intended to serve a different purpose. No lien is given by the act of 1899. The bond re-

quired by that act is sole security of laborers and materialmen who do work and furnish material to the contractor.

It is suggested on the briefs of counsel for defendant that there is no privity between one furnishing coal to the contractor and the surety upon the contractor's bond. This objection is fully met by section 2 quoted above, which gives the right to any laborer or furnisher to bring an action on the bond and have a recovery in his own name. *Templeton* v. *Nipper,* 107 Tenn., 548, 64 S. W., 889; 9 Cyc., 372.

The writ of *certiorari* was heretofore granted, and the decree of the court of civil appeals is affirmed.