IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION

KNOXVILLE. SEPTEMBER TERM, 1920.

CARTER COUNTY *et al. v.* OLIVER-HILL CONST. CO. *et al.*

(*Knoxville.* September Term, 1920.)

1. JUDGMENT. Decision in bankruptcy not adjudication as to liability of surety of bankrupt, expressly withheld from determination.

Where the bond of a road contractor not only guaranteed faithful performance, but guaranteed full payment to laborers and materialmen, as required by Acts 1899, chapter 182, and on the contractor being declared a bankrupt, the surety filed a petition in bankruptcy proceedings, praying that the balance due on the contract should be collected by the trustee in bankruptcy and applied in payment of claims for labor and material furnished before general creditors should be permitted to participate, the determination in the bankruptcy proceeding was not conclusive against the rights of laborers and materialmen to recover against the surety, where it appeared that only those claims, payment of which was sought by the surety, were paid; it expressly appearing that the bankruptcy court did not undertake to adjudicate what claims should be paid. (*Post, pp.* 654-656.)

2. HIGHWAYS. Surety on contractor's bond liable for food furnished animals and workmen.

(649)

Where road contractor's bond extended its indemnity to laborers and materialmen in accordance with Acts 1899, chapter 182, the surety is liable to persons furnishing food for laborers and animals engaged in performance of the contract; but it is not liable for goods furnished the contractor for its commissary, which were sold to outsiders as well as employees. (*Post, pp.* 657-663.)

Acts cited and construed: Acts 1899, ch. 182.

Cases cited and approved: Title Guar. & T. Co. v. Crane Co., 219 U. S., 24; U. S. Fid. & G. Co. v. U. S., 231 U. S., 237; Ill. Surety Co. v. John Davis Co., 244 U. S., 376; Keopee Consol. Coke Co. v. v. Taylor, 234 U. S., 224.

Cases cited and distinguished: Pittsburg Coal Co. v. So. Asphalt & Const. Co., 138 Tenn., 154; Brogan v. Nat. Surety Co., 246 U. S., 261.

3. **HIGHWAYS.** Surety not liable to one who cashed orders for contractor.

Where the bond of a road contractor guaranteed payment to laborers and materialmen in accordance with Acts 1899, chapter 182, a storekeeper who cashed in merchandise pay checks of employees of the contractor under an arrangement that the contractor would make settlement after thirty days is not entitled to recover on the bond; there appearing to have been no assignment of the laborers' claims to the storekeeper, but a mere credit arrangement with the contractor. (*Post, pp.* 663-667.)

Case cited and distinguished: United States v. Rundle, 107 Fed., 227.

4. **COSTS.** Trial court directed to consider, in taxing costs below, fact that costs of appeal were taxed against surety, though he secured reversal in part.

Where contractor's surety on appeal from an adverse judgment secured reversal as to some claims, but it would require much labor to apportion costs on appeal, and all costs of appeal were assessed against surety, trial court will be directed to take that fact into consideration. (*Post, p.* 667.)

## FROM CARTER.

Appeal from the Chancery Court of Carter County.—
HON. H. HAYNES, Chancellor.

SIZER, CHAMBLISS & CHAMBLISS, COX & TAYLOR and MIL-
LER & SEILER, for appellants

BOREN & EDENS, W. R. ALLEN and COLLINS & HYDER, for
appellees.

MR. JUSTICE McKINNEY delivered the opinion of the
Court.

In October, 1915, the Oliver-Hill Construction Company
entered into a written contract with the road commission-
ers of Carter county for the construction of certain roads
and highways in said county, and the Hartford Accident
& Indemnity Company became surety on the bond of the
construction company, which bond provided, among other
things, as follows:

"In addition to guaranteeing the faithful performance
of the contract as appears from same hereto attached and
hereinbefore set forth, it is also understood and agreed
that this bond shall protect all laborers and materialmen
who furnish labor and materials used in the construction
of roads contracted for, and the surety herein guarantees
the full payment of all laborers and materialmen by the
principal heerin as required by Acts of the Generall As-
sembly of the State of Tennessee of 1899, chapter 182."

It appears that the construction company lost consider-
able money on this contract, and about the time said roads
were completed, to-wit, September 19, 1917, an involuntary

petition in bankruptcy was filed against it in the federal court by some of its creditors, and about the same time a number of suits were instituted against it and the surety on said bond in the state courts, by those who claimed to have furnished labor or materials on the contract, for which the surety company was liable.

Thereafter the said surety company filed a general creditors' bill enjoining all of said suits in the State courts, and praying that all claims be adjudged in that suit.

Subsequently the said surety company filed a petition in the bankruptcy proceeding, in which it prayed that the balance due the construction company on account of said road contract be collected by the trustee in bankruptcy, and that said fund, when so collected, be applied in payment of claims for labor and material furnished on said contract before general creditors should be permitted to participate, and thus relieve it, as far as possible, as surety on said bond.

The fourth prayer of said petition is as follows:

"That all persons asserting claims against said fund, or against this complainant as the surety on the bond hereinbefore referred to, whether such claims be for labor and material furnished on the contract or whether a lien is asserted against said fund on some other ground, be required to file and prove their said claims in this cause, and that the rights of such claimants be ascertained and determined by appropriate proceedings."

It is also prayed in said petition: "That the defendants who have brought suits in the State courts against the construction company and this complainant on the

bond, Exhibit A hereto, be enjoined and inhibited from further prosecution of said suits, and that all other persons be enjoined from instituting and prosecuting any suit on said bond, or against said fund, except by petition in this court and cause."

Various creditors of the construction company filed petitions in said bankruptcy court, setting forth in detail their claims against said construction company for labor and material furnished on said contract.

The referee in bankruptcy declined to enjoin the suits in the State courts, and no injunction was ever awarded by the presiding judge.

The various suits in the State courts were consolidated and heard together, and a decree was entered by the chancellor, adjudicating the rights of the parties in a general way, and referring the cause to the master for an accounting in conformity with the principles announced in his opinion and decree based thereon, and in advance of the report on reference the chancellor, in the exercise of his discretion, permitted the surety company to appeal to this court.

The first assignment of error made by the surety company goes to the action of the chancellor in overruling its plea of *res judicata,* it being insisted that the matters here involved were determined in the bankruptcy proceeding.

To this we cannot assent. Both the referee and the trial judge allowed only such claims for labor or material as were admitted by the surety company, and neither undertook to adjudicate the rights and equities as between the creditors and the surety company.

In said bankruptcy proceeding it was agreed that the balance due the construction company from the county was $11,130.40. With the approval of the surety company, the referee allowed claims aggregating $9,600.99. The order of the referee, after setting forth the names of the creditors and the sums allowed each, recites:

"It appears that there are items not embraced in the amounts above set forth in the claims of Barnes-Boring Hardware Company and Summers-Parrott Hardware Company which the claimants insist went into the road construction so as to give the claimants lien on the funds arising from the road contract; but the petitioner, Hartford Accident & Indemnity Company, insists that these items are not secured by lien and it does not ask payment thereof under its petition. Action on these disputed items is therefore reserved by the court until the order and *status* of other labor and material claims and alleged assignments against the remainder of the fund have been established and fixed by the court. The trustee will pay out of said Carter county fund said claims, the names and amounts of which are above set forth."

The Barnes-Boring Hardware Company filed a petition to review the action of the referee, and, in passing upon its claim, the court said:

"The Barnes-Boring Hardware Company was not entitled to a decree directing the payment of its claim for materials alleged to have been furnished the bankrupt beyond the $4,763.13, which the indemnity company sought to have so paid. Regardless of the question whether any

of the additional items were for materials used in the contract within the meaning of the act of 1899, the hardware company itself had no lien therefor, and the payment of the same should only be directed upon the application of the indemnity company in enforcement of its equitable right as surety, and since it did not seek the payment of such additional claims but on the contrary resisted the payment of the same, such items should clearly only be allowed as unsecured claims against the bankrupt."

The court, in passing upon the claim of the Monarch Mills Company, said:

"Furthermore as the indemnity company did not seek the payment of these claims, in the enforcement of its equitable right, they could in no event have been allowed as secured claims against the bankrupt, at the instance of the claimants themselves."

What we have quoted above shows conclusively that the court allowed only such claims as the surety company admitted, and controverts the idea that the court undertook to adjudicate as between creditors of the construction company and the surety on its bond.

A number of reasons could be given as to why the plea of *res judicata* is not effective, but it is unnecessary to do so, since it appears positively that the court did not undertake to adjudicate as to the liability of the surety company, but only undertook to adjudicate, upon the application of the surety company and in enforcement of its equitable right, what claims should be paid out of this particular fund.

The second assignment of error is as follows:

"In holding and adjudging that food furnished to the animals and men of the contractor while engaged in work under the contract constituted valid claims for labor or materials used in said contract, and the surety on the contractor's bond was liable for the same.".

Relative to the feed furnished for the work stock, we find the following statement in the stipulation of facts:

"Said hay, oats, corn, etc., were used by the Oliver-Hill Construction Company in feeding its horses and mules, while engaged in the construction of the said Carter county roads under the contract as aforesaid."

As we understand the record, this stipulation applies to all claims for feed.

We are of the opinion that the chancellor was correct in allowing a recovery for feed so furnished.

In *Pittsburg Coal Co.* v. *Southern Asphalt & Construction Co.,* 138 Tenn., 154, 196 S. W., 490, it was held that the surety company was liable to one furnishing coal to operate machinery used in the construction of a sewer for a city. The court said:

"The coal that furnished the power by which the machinery was operated was as much material used in the contract as the labor of men for which it was substituted."

The court further said, relative to the act of 1899, the following:

"We are cited to many cases from other jurisdictions, but all of them construe mechanic's lien statutes. The statute under consideration here is not a mechanic's lien

statute, and has no application except in cases of public works. . . . These statutes are essentially different from the one under consideration, and were intended to serve a different purpose. No lien is given by the act of 1899. The bond required by that act is sole security of laborers and materialmen who do work and furnish material to the contractor."

While counsel have undertaken to differentiate between that case and the one under consideration, upon principle we think they are the same.

With reference to the construction of the act in question (chapter 182 of the Acts of 1899) the chancellor said:

"This court accordingly holds that whatever may be, in reason, denominated 'material,' and is shown to have been used in said 'contract,' that is, in the operation to execute it, and which the construction company owes for, also all outstanding indebtedness of the construction company for labor so used, constitute claims which the surety on said bond, guaranteed should be paid.

"No sound reason appears to this court, in this kind of a case, where no lien is involved, and no condition that the material should become a part of the improvement is imposed for requiring the surety to guarantee payment for such articles as oil and fuel, such as gasoline and coal, on the theory that they were necessary to operate machinery, which saved labor, and in a sense were material, or a substitute for labor, 'used in said contract,' and at

143 Tenn.—42

the same time disallowing claims for grain or food for the men and horses, or other material used in the upkeep of the contractor's outfit, and which were as much or more than fuel, etc., for machinery reasonably essential to an economical and sensible effort to carry out the contract. The fact that the stock and men must eat on Sundays, or whether actually at work or not, as the basis of distinction, between fuel, for the machinery and fuel for the outfit, seems too refined, in this kind of a case, where only use 'on the contract' was contemplated; that is to say, where debts contracted for material and labor, used in the operation, and not necessarily becoming part of the improvement itself, and payment of which would be as naturally and justly required to be guaranteed, are the matters in controversy.

"Any material, such as food for the stock or men, or oil or fuel used upon or to operate the machinery or outfit, while engaged in this work, including, as well, that used on Sundays or holidays, or during the usual and ordinary suspensions of such operations, and owed for by the contractor, is held to be covered by the said bond. The machinery itself, including vessels, tools, etc., are held not to be material within the meaning of the statute. This latter point was not particularly considered, nor decided, in the decree on the demurrer, no part of a bill, having been specially challenged, so as to require its decision. This is true, notwithstanding the broad language of the former decree, relating to the several articles enumerated in the various bills. For example, the demurrer to bill of Sum-

mers-Parrott Hardware Company challenged the whole bill and then all parts of it except for dynamite which would be insufficient to raise said question as to tools, etc. And upon consideration of that question on its merits the court believes and holds that articles, such as vessels or dishes for the outfit, or camp, nor tools nor the machinery itself of any kind, are not material, used in the sense of the statute."

It appears that the construction company operated a commissary from which it sold food and clothing to outsiders, as well as to its employees, and the chancellor disallowed all claims for merchandise sold to the commissary, and we think properly so.

His opinion, as we interpret it, adheres to the opinion of the supreme court of the United States in *Brogan* v. *National Surety Co.*, 246 U. S., 261, 38 Sup. St., 251, 62 L. Ed., 705, L. R. A., 1918D, 776, which opinion we approve. We quote from that opinion as follows:

"The facts undisputed, or as found by the lower court and accepted by the court of appeals, were these: The Standard Contracting Company undertook to deepen the channel in a portion of St. Mary's river, Michigan, located 'in a comparative wilderness at some distance from any settlement. There were no hotels or boarding houses,' and the contractor 'was compelled to provide board and lodging for its laborers.' Groceries and provisions of the value of $4,613.87, furnished it by Brogan, were used by the contractor in its boarding house, and were supplied 'in the prosecution of the work provided for in the contract and

the bond upon which this suit is based. They were necessary to and wholly consumed in such work.' The number of men employed averaged eighty. They were 'boarded' partly on the dredges, partly in tents supplied by the contractor; all under an arrangement made with the labor unions by which the contractor was to board the men and deduct therefor $22.50 a month from their wages. The contract and the bond executed by the National Surety Company bound the contractor to 'make full payment to all persons supplying him with labor or materials in the prosecution of the work provided for in' the contract.

"The supplies furnished by Brogan under these circumstances were clearly used in the prosecution of the work, just as supplies furnished for the soldiers' mess are used in the prosecution of war. In each case the relation of food to the work in hand is proximate."

The court further said:

"This court has repeatedly refused to limit the application of the act to labor and materials directly incorporated into the public work. Thus, in *Title Guaranty & T. Co.* v. *Crane Co.*, 219 U. S., 24, 34, 55 L. Ed., 72, 77, 31 Sup. Ct., Rep., 140, the claims for which recovery was allowed under the bond included not only cartage and towage of material, but also claims for drawings and patterns used by the contractor in making molds for castings which entered into the construction of the ship. In *United States Fidelity & G. Co.*, v. *United States*, 231 U. S., 237, 58 L. Ed., 200, 34 Sup. Ct. Rep., 88, where the work contracted for was building a breakwater, recovery was allowed for all the

labor at a quarry opened fifty miles away. This included, as the record shows, the labor not only of men who stripped the earth to get at the stone and who removed the debris, but carpenters and blacksmiths who repaired the cars in which the stone was carried to the quarry dock for shipment, and who repaired the tracks upon which the cars moved. And the claims allowed included also the wages of stablemen who fed and drove the horses which moved the cars on those tracks. In *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S., 376, 61 L. Ed., 1206, 37 Sup. Ct. Rep., 614, recovery was allowed not only for the rental of cars, track, and other equipment used by the contractor in facilitating his work, but also the expense of loading this equipment, and the freight paid thereon to transport it to the place where it was used. As shown by these cases, the act and the bonds given under it must be construed liberally for the protection of those who furnish labor or materials in the prosecution of public work.

"The circuit court of appeals deemed immaterial the special circumstances under which the supplies were furnished and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond. In our opinion these facts are not only material, but decisive. They establish the conditions essential to liability on the bond. The bare fact that the supplies were furnished to the contractor and were consumed by workmen in its employ would have been immaterial. A boarding house might be conducted by the contractor (like some

company stores concerning which states have legislated—
*Keokee Consol. Coke Co.* v. *Taylor,* 234 U. S., 224, 58 L. Ed.,
1288, 34 Sup. Ct. Rep., 856) as an independent enterprise,
undertaken solely in order to utilize the opportunity for
separate and additional profit afforded by the congrega-
tion of many laborers in the particular locality where the
public work is being performed. The laborers might re-
sort to such a boarding house in the exercise of individual
choice in the selection of an eating place. Under such cir-
cumstances the furnishing of supplies would clearly be
a matter independent of the work provided for in the con-
tract, and would not entitle him who had furnished the
groceries used in the boarding house to recover on the bond.
But here, according to the undisputed facts and the find-
ings of the trial court, the furnishing of board by the con-
tractor was an integral part of the work and necessarily
involved in it. Like the supplying of coal to operate en-
gines on the dredges, it was indispensable to the prosecu-
tion of the work, and it was used exclusively in the per-
formance of the work. Groceries furnished to a contractor
under such circumstances and consumed by the laborers
are materials supplied and used in the prosecution of the
public work. The judgment of the circuit court of appeals
is therefore reversed and that of the district court af-
firmed."

The third assignment of error is as follows: "In hold-
ing and adjudging that persons who paid the employees
of the contractor for work done under the contract upon
orders of the contractor, charging the amounts so paid to

the contractor and taking no assignment from the employees of their claims, were entitled to recover the amounts so paid from the surety on the bond."

The nature of the claims, questioned in the foregoing assignment, are found in the question and answer of one of the claimants, R. S. Houston, as follows:

"Q. 5. State if the Oliver-Hill Construction Company by its agents made any arrangements with you for an extension of credit ·at your store, and, if so, state fully what arrangements they made with you for such extension of credit, and the result of such arrangement—state fully all about it.

"A. Mr. Ogden—R. W. Ogden—came into my place of business in the year 1917, about the month of June, and stated to me that they were near the completion of the job in the thirteenth district—that is the construction of the road in the thirteenth district—and that they had removed their commissary and some of the equipment to other parts of the county to work on other parts of their pike road work and that they were going to hire Mr. J. C. Dempsey to complete the road there in the thirteenth, and it would be necessary for the employees of the road to have merchandise as this work was progressing, and Mr. Dempsey would give the laboring men the orders to my store, and for me to keep an account of it and present my account to the general office at Elizabethton, Tenn., of which he was in charge, and he would pay me my account in full on the 20th of every month. I agreed to accept the orders of Mr. Dempsey to the men for the amount of their

labor and pay them in merchandise in my store. As a result of this arrangement I accepted the orders and paid them off in merchandise, goods, wares, etc. I presented the accounts to the general office—to Mr. Ogden—along with the orders for payment. He never paid them. He would always make some kind of excuse that the county road commissioners would fail to get or make an estimate on the work done."

The evidence is substantially the same as to all claims of this class, including that of Wagener Brothers.

It is admitted that such orders were issued in payment of sums due laborers for work done on the contract, but there is no claim that such orders were assigned or transferred to the respective claimants, further than that they were handed to claimants, for which goods or money were delivered to the laborers presenting them. From the testimony of these claimants it appears that when they paid these orders they charged the sum so paid to the contractor, and in that way extended credit to it, and subsequently presented the accounts, accompanied by said orders, for payment.

In *United States* v. *Rundle*, 107 Fed., 227, 46 C. C. A., 251, 52 L. R. A., 505, suit was brought on a contractor's bond to recover money paid to the employees of the contractor on time checks issued to the employees by the contractor. The court said:

"The whole transaction, as it is detailed by all the witnesses, amounted to an agreement whereby the bank agreed to loan money to Rundle to carry out his contract and to permit him to check out the loan as required to pay the

laborers. When the time checks were paid by the bank they were indorsed as any other checks would have been indorsed by the payees. There is nothing in the circumstances to show an assignment to the bank of any of these time checks for labor or the orders for the payment of materialmen, or that it was the intention of the bank to take such assignments, or to become substituted to the rights of such payees." . . . Nor can it be claimed that the law will raise a presumption of an assignment upon the facts in the case. It is true that an assignment may in some cases be made by parol, and that under certain circumstances the presumption will arise that an assignment was intended solely from the nature of the transaction. But in the circumstances of the present case we discover nothing upon which to rest such a presumption. The agreement was wholly between the contractor and the bank. The laborers and the materialmen were not parties to it. They took their checks and their orders to the bank as directed, and were there paid. The checks and orders were indorsed as evidences of payment, and for no other purpose, and the bank retained them as vouchers. In this there was no assignment."

This case seems to be in point and decisive of the question here involved. No authority to the contrary has been furnished.

We are therefore of the opinion that the chancellor was in error in allowing such claims, and this assignment of error will be sustained.

There are several other assignments of error, but claimants do not refer to them in their written argument. Upon examination, we find said assignments are without merit, and they are accordingly disallowed.

The assignments of error made by the Summers-Parrott Hardware Company and the Barnes-Boring Hardware Company are disallowed for the reasons set forth in the opinion of the chancellor.

It results that the decree of the chancellor will be modified, so as to exclude all claims based upon orders issued by the construction company to its employees, which orders were paid by claimants herein either in merchandise or money, but in all other respects the decree of the chancellor will be affirmed.

The cause will be remanded to the chancery court, for the execution of the order of reference as decreed by the chancellor, with the modification hereinabove indicated.

The costs of the appeal will be paid by the surety company. We realize that, as a matter of equity, claimants, who are adversely affected by this opinion, should pay a small part of the costs of the appeal, but it would require much time and labor to determine what they should pay. In view of the fact that the costs of the lower court are to be hereafter decreed by the chancellor, he is directed, in adjudicating same, to take into consideration the fact that the surety company has been taxed with all the costs of the appeal.