HAMBLEN MOTOR CO. *v.* MILLER & HARLE *et al.**

(*Knoxville.* September Term, 1924.)

1. **CHATTEL MORTGAGES.** Lien not lost on removal of truck to Tennessee, as against subsequent mortgagee.

Lien of purchase-money Kentucky mortgage on truck is not lost on removal of property to Tennessee, as against claim of subsequent Tennessee mortgagee, unless prior mortgagee consented to removal, or, with knowledge thereof, failed to assert rights within reasonable time. (*Post, p.* 606.)

Cases cited and approved: Lover-Strouse & Co. v. Bessenger, 68 Tenn., 395; Tilford v. Broyles, 2 Shan. Cas., 533.

2. **CHATTEL MORTGAGES.** Not released by renewal of note, unless so intended.

Chattel mortgage or debt is not ordinarily released or discharged by renewal of note secured by mortgage, unless contrary intent is indicated. (*Post, pp.* 606, 607.)

Cases cited and approved: Snyder v. Yates, 112 Tenn., 309; Hughes v. Abston, 105 Tenn., 70; Bank v. Hill, 99 Tenn., 42; Newsum v. Hoffman, 124 Tenn., 369.

3. **CHATTEL MORTGAGES.** Bank held to have taken second mortgage on truck with knowledge of prior purchase-money mortgage.

That mortgagor of truck told bank president that he owed a certain balance on purchase price of truck, which president stated on schedule annexed to mortgage to bank, which he prepared when mortgage was accepted, *held* to show that bank knew of prior mortgage recorded in nearby State, so as to preclude bank's assertion of priority. (*Post, pp.* 607, 608.)

---

*On the question of consent of mortgagee to removal of mortgaged property from state as affecting his lien, see notes in 6 L. R. A. (N. S.), 940; L. R. A., 1917D, 942.

Hamblen Motor Co. v. Miller & Harle.

4. **HIGHWAYS.** Creditor's acceptance from contractor of notes for open account held not extinguish lien for same material.

Creditor's acceptance of contractor's notes to close open account for tires as repairs *held* not to extinguish lien for same material, expiring after last note matured. (*Post, pp.* 608, 609.)

Acts cited and construed:   Acts 1909, ch. 150;   Acts 1919, ch. 55.

Case cited and approved:   Bank v. Klyce, 127 Tenn., 670.

5. **HIGHWAYS.** Gasoline and kerosene, supplied to subcontractor for trucks, held lien against State highway fund; item for tires disallowed.

Gasoline and kerosene, carried in trucks by motor company and delivered therefrom to subcontractor's tanks, from which his trucks and machinery obtained their fuel supply, notwithstanding slight diversion in use of trucks without seller's knowledge, *held* to establish lien, under Acts 1917, chapter 74, section 6, against fund retained by State highway department to insure payment of subcontractor's materials, as materials used upon work, though an item for tires must be disallowed. (*Post, pp.* 609(613.)

Acts cited and construed:   Acts 1917, ch. 74, sec. 6.

Cases cited and approved:   Carter County v. Oliver Hill Construction Co., 143 Tenn., 649;   Cass v. Smith, 146 Tenn., 218;   Cohn v. Walker Const. Co., 131 Tenn., 445;   Pittsburg Coal Co. v. So. Asphalt & Const. Co., 138 Tenn., 154.

Case cited and construed:   So. Const. Co. v. Halliburton, 149 Tenn., 319.

---

*Headnotes 1.   Chattel Mortgages, 11 C. J., section 391 (1926 Anno);   2.   Chattel Mortgages, 11 C. J., section 461;   3.   Chattel Mortgages, 11 C. J., section 391 (1926 Anno);   4.   Highways, 29 C. J., section 349 (1926 Anno);   5.   Highways, 29 C. J., section 349 (1926 Anno).

---

FROM HAMBLEN.

---

Appeal from the Chancery Court of Hamblen County. —Hon. M. H. Gamble, Chancellor.

Rufus M. Hickey, for Motor Co.

Chas. S. Stephens, City Nat. Bank.

E. F. Smith and J. H. Bell, for Miller & Harle.

Mr. Justice Cook delivered the opinion of the Court.

This appeal involves a controversy (1) between the City National Bank of Morristown and the Hannah-Miles Motor Company, Inc., of Louisville, Ky., as to priority of liens under a mortgage upon a Packard truck; (2) between the City National Bank and the Hamblen Motor Company, over a fund of $2,215, retained by the State highway department from Miller & Harle, principal contractors, to assure payment for material used by Lang, the subcontractor, in the construction of a State highway.

The chancellor adjudged the claim of Hannah-Miles Company to the truck superior to that of the bank, and held that a lien existed in favor of the Hamblen Motor Company upon the fund retained by the State highway department. The bank appealed.

The result as between the bank and the Hannah-Miles Company is dependent upon the recognition that must be given the deed of trust executed in Kentucky by Lang, before the deed of trust was given in Tennessee for the benefit of the bank.

Hannah-Miles Company, formerly the Southern Motor Company, a dealer in trucks, at Louisville, Ky., on Jan-

uary 15, 1921, sold Lang a five-ton Packard truck for $4,500—$3,000 cash, remainder in three notes $500 each, due one, two, and three months after date, secured by a mortgage on the truck. The notes and mortgage were executed January 15, 1921. October 12, 1921, Hannah-Miles Company succeeded the Southern Motors Company and took from Lang four renewal notes of $265 each, due one, two, three, and four months after date, in satisfaction of the balance due on the mortgage debt. The new notes recite that they are renewals of the original notes secured by chattel mortgage January 15, 1921.

The motor on the truck proved defective, and a new motor, No. 124662, was substituted for the defective motor, No. 124664. The plate bearing the car No. 124664 called for in the mortgage had been erased, or was lost when this controversy arose; but the proof shows that the truck in controversy is the one covered by the mortgage to Southern Motors Company, dated January 15, 1921.

Lang's residence was at 2024 Frankfort avenue, Louisville, Ky., when the mortgage was executed to the Southern Construction Company, and also when the second mortgage was executed to City National Bank. While the truck was delivered to Lang by the Packard Company, in Tennessee, there is no proof to indicate that it was carried there with the consent of the mortgagee, or that it was kept under such circumstances as to constitute a waiver by the Hannah-Miles Company of its rights under the Kentucky mortgage.

Lang subcontracted with Miller & Harle, principal contractors, in December, 1920, and commenced the work soon afterwards. August 15, 1921, he executed a mort-

gage to the City National Bank to secure a note of $16,500 with Miller & Harle, indorsers. The mortgage covered all of Lang's equipment, including the five-ton Packard dump truck. The conveyance to Miller & Harle contains no specific description of the chattels. The description is found in a schedule annexed which recites:

"The figures in red on the right-hand column represent the balance due on purchase money of said machinery listed to left of said red figures."

This schedule contains the only reference to the truck, describing it as one five-ton Packard dump truck $7,000.00 minus $1,450.00. The last figures in red indicate, according to the memorandum at the head of the schedule, that $1,450 of the purchase money was unpaid.

The bank insists that its mortgage is superior to that of the Hannah-Miles Company, because acceptance of the renewal notes October 12, 1921, extinguished the original debt secured by the mortgage.

As a general rule where a mortgage is given to secure a note, and at maturity the note is renewed, such renewal will not discharge the debt, nor release the mortgage, in the absence of a contrary contention. *Lover-Strouse & Co.* v. *Bessenger,* 9 Baxt., 395; *Telford* v. *Broyles,* 2 Shan. Cas., 533.

The new notes recite that they are in partial renewal of those mentioned in the chattel mortgage January 15, 1921. It clearly appears that they are a renewal of the debt secured by the chattel mortgage January 15, 1921, and that there was no intention to extinguish the mortgage debt by the substitution of the renewal notes.

The action of the chancellor, holding the liens under the Hannah-Miles Company mortgage superior to that

of the bank, is sharply challenged on the ground that the bank is an innocent purchaser for value without notice, and that the Kentucky mortgage is unenforceable, because the property was brought to Tennessee by consent of Hannah-Miles Company. It does not appear, unless by inference, that Hannah-Miles Company consented to the removal of the truck from Kentucky. Express consent is not shown, nor does it affirmatively appear that Hannah-Miles Company knew that the truck was brought to Tennessee for permanent use.

The mortgage of Lang to Southern Motors Company was acknowledged and recorded in Kentucky, as required by the laws of that State, and was valid and enforceable there. This being true, the rights acquired by the mortgagee in Kentucky will be recognized and enforced against the property upon its removal here as against the claim of a subsequent mortgagor (*Snyder* v. *Yates,* 112 Tenn., 309, 79 S. W., 796, 64 L. R. A., 353, 105 Am. St. Rep., 941; *Hughes* v. *Abston,* 105 Tenn., 70, 58 S. W., 296; *Bank* v. *Hill,* 99 Tenn., 42, 41 S. W., 349), unless it appears that the mortgagee consented to the removal of the property from Kentucky to Tennessee, or had knowledge of it, and failed to assert its rights within a reasonable time. *Newsum* v. *Hoffman,* 124 Tenn., 369, 137 S. W., 490.

In our view the Southern Motors Company and its successor, Hannah-Miles Company, did nothing to impair the priority of their lien upon the truck. Moreover, the City National Bank was put upon inquiry before acceptance of the mortgage. Mr. Fisher, president of the bank, testifies that he prepared the mortgage to the bank, and the descriptive schedule annexed conveyed information that a balance of $1,450 purchase money outstood against

the truck when the mortgage was accepted November 18, 1921. Lang then told Mr. Fisher that he owed this balance of $1,450 purchase money on the truck. This information was sufficient to put the bank upon inquiry and, reasonably pursued, supplied full knowledge of the facts. The evidence authorizes the inference that the bank knew of the Kentucky mortgage when it accepted the mortgage from Lang. Such an acceptance, with notice of the prior claim, would preclude the bank from asserting priority. There is no error in the decree of the chancellor in so holding.

November 18, 1921, Lang assigned to the bank ten per cent. withheld by Miller & Harle from estimates upon work under the contract. This retainage was assigned as collateral security upon the note of $16,500 indorsed by Miller & Harle. The assignment to the bank, being in the form of an order, was accepted by Miller & Harle, and under it the bank claims the $2,215.09 retained by the State highway department to assure payment for material used on the work. Hamblen Motor Company notified the State highway department of its claim for material, sold and delivered to Lang, used in the work upon the highway, and filed the original bill in this cause against Miller & Harle, F. M. Lang, and the State highway department to enforce its claim. The claim is made up of tires, gasoline, and oil, itemized as follows:

| | |
|---|---|
| Tires | $ 588.05 |
| Gasoline | 1,667.91 |
| Kerosene | 59.13 |

In its amended and supplemental bill the motor company sought by attachment to enforce a lien for the value

of the tires as repairs upon the truck, under chapter 150, Acts of 1909, and chapter 55, Acts of 1919. Upon the hearing this contention was abandoned.

The motor company closed its open account of $2,907.29 against Lang by notes. It is urged by the bank that this action amounted to a waiver of the lien. The notes are dated February 1, 1922; the last one maturing August 16, 1922. The right to enforce payment of the debt for which the lien is claimed was not postponed beyond the extinguishment of the lien. The lien being in force when the last notes matured, this would not extinguish it. *Bank* v. *Klyce*, 127 Tenn., 670, 156 S. W., 1083.

When Lang entered upon the work of quarrying stone for use as the base of the highway, which Miller & Harle had contracted to build, he procured the Hamblen Motor Company, formerly Neill-Price Company, to supply gasoline and oil for use in operating the motor trucks and machinery, and from time to time had the motor company to replace tires upon the trucks used in hauling the stone. The motor company claims a lien for the value of the gasoline and oil, and also for the value of the tires, under the act of 1917. Chapter 74, section 6, of the act provides:

"All contractors with whom contracts are made by the department shall enter into good and solvent surety bond in an amount fixed by the department, conditioned upon the full and faithful performance of every part and stipulation of the contract, especially the payment for all materials purchased and for all labor employed in the contemplated work. This bond must be approved by the department and filed with its records. . . . Before final acceptance, the contractor must furnish evidence to

150 Tenn.—39.

satisfy the department that all the material used by him, his subcontractors, or his agents, has been fully paid for and all laborers and other employees working for him. his subcontractors, or his agents, have been fully paid. When this is done, full settlement may be made, with the contractor; but not until thirty days' notice in some newspaper published in the county where the work is done, if there be a newspaper published there, and if not, in a newspaper in an adjoining county, that settlement is about to be made and notify all claimants to file notice of their claim with the secretary of the department. The secretary of the department shall withhold a sufficient sum from the contract price due to pay all claims, including advertising, of which notice is filed with him, for a reasonable time to allow claimants to sue for and prove their claims against the contractor or his agent, in some court of competent jurisdiction.''

The motor company gave notice of its claim of $2,215.09, which sum was retained by the highway department, and it is this sum that the bank lays claim to under its assignment from Lang.

It is insisted that the motor company has no right to a lien under the act. In *Southern Construction Co. v. Halliburton,* 149 Tenn., 319, 258 S. W., 414, Chief Justice GREEN, speaking for the court, said:

''We think that the material for which the general contractor and its surety are liable, under the act of 1917, is material consumable in the use or intended to be consumed in the use. This court did not undertake to agree with all the opinion of the chancellor, which was quoted in *Carter County v. Oliver Hill Construction Co.,* 143 Tenn., 649, 228 S. W., 720, in which he indicated a view

Hamblen Motor Co. v. Miller & Harle.

contrary to that just expressed. The act of 1917 provides for final acceptance of the contract when the highway department 'shall be satisfied that all 'material used' by the contractor, 'his subcontractors, or his agents, has been . . . paid for.' It would be too broad a construction of this statute to fasten such a liability upon the general contractor and the surety for materials which the subcontractor purchased, which were not used up in the job, and remained the property of the subcontractor, to be thereafter used by him in other work. Tools would, of course, fall under such a ruling as this. If materials were bought with the intention of using them in the job, but by chance they were not so used, then there might be liability. *Cass* v. *Smith,* 146 Tenn., 218, 240 S. W., 778. Unless, however, the material was consumed in the work or intended to be so consumed, it falls short of the protection of the act of 1917. This is in strict analogy to the holding of the court under our lien statutes. *Cohn* v. *Walker Const. Co.,* 131 Tenn., 445, 175 S. W., 536.''

While there is a contrary contention, it appears from the weight of evidence that the motor company sold and delivered to Lang gasoline and kerosene of the value of $1,727.04, to be used in the performance of his contract.

The gasoline and kerosene was carried in trucks by the motor company to Lang's quarry and works and delivered from the motor company's trucks to Lang's tanks, from which his trucks and machinery obtained their supply of fuel. Under these circumstances any slight diversion in use of the trucks so supplied, without knowledge of the motor company, could not affect its claim. It cannot be assumed that the trucks, while used in Knox-

ville and Morristown, would go back to these tanks for their gasoline supply, and there is no proof that they did.

It appears from the weight of the evidence that the gasoline was supplied as fuel to be used, and which was used in generating power in trucks devoted to hauling rock from the quarries to the highway, and that the kerosene was devoted to a like use. We are unable to distinguish such a use from the use of feed for mules used to haul upon public works, or from coal used to generate power in the prosecution of a public work.

Under authority of *Pittsburg Coal Co.* v. *Southern Asphalt & Const. Co.*, 138 Tenn., 154, 196 S. W., 490, and *Carter County* v. *Oliver Hill Const. Co.*, 143 Tenn., 649, 228 S. W., 720, the gasoline and kerosene supplied Lang by Hamblen Motors Company constituted material used in performance of the contract within the meaning of the act of 1917. This conclusion is not contrary to that of the court in *Southern Const. Co.* v. *Halliburton*, in disallowing the claim of Bellamy and Harrell. It did not appear from the proof in support of that claim what use the subcontractor made of the gasoline.

The bank seriously insists that Lang used the trucks, hauling stone upon a contract with the city of Morristown, and in work for the county, beyond the scope of the contract with Miller & Harle. It does not appear that the Hamblen Motor Company knew of the diversion to such purposes. On the contrary it appears that they sold and delivered the gasoline and kerosene to Lang for use in the construction of the federal aid project, upon which he was carrying on a contract under Miller & Harle, and that it was devoted to such use, with slight diversion without their knowledge.

The claim of $588.55 for tires, repairs, and betterments on the trucks do not constitute materials used upon the work, and, for the reasons stated in the *Southern Construction Co.* v. *Halliburton,* supra, under the paragraph disposing of the Church Hill Supply Company's claim for lumber, the item for tires must be disallowed.

With this modification, the decree of the chancellor is affirmed.