SOUTHERN CONST. CO. *v.* J. G. HALLIBURTON *et al.*
LUTHER BROOKS *v.* SOUTHERN CONST. CO.
SOUTHERN CONST. CO. *v.* A. B. ROGAN *et al.*

(*Knoxville.* September Term, 1923.)

1. **STATUTES.** Irreconcilable later act must prevail.

Where there is an irreconcilable conflict between the provisions of two statutes, the provisions of the later act must prevail. (*Post, pp.* 328, 329.)

Acts cited and construed: Acts 1899, ch. 182; Acts 1917, ch. 74.
Case cited and approved: Templeton v. Nipper, 107 Tenn., 548.
Code cited and construed: Sec. 1135a (T.-S.).

2. **STATUTES.** Repugnant statute impliedly repealed.

Although a later act may not cover the entire subject-matter of an earlier act, nor purport to provide a new system, if the later act is repugnant and irreconcilable on a particular point, it will operate as a repeal by implication to the extent of the repugnance and conflict. (*Post, p.* 329.)

Cases cited and approved: Bailey v. Drane, 96 Tenn., 16; Balden v. State, 122 Tenn., 704.

3. **HIGHWAYS.** Statutes construed as to notice of claim against highway contractor.

The provision as to notice contained in Acts 1899, chapter 132 (Thompson-Shannon Code, section 1135a et seq.), was impliedly repealed by Acts 1917, chapter 74, and under the later statute public officers must take the initiative and advertise for claims against general contractor, and notice of such claims is not due to be filed until after such advertisement is made. (*Post, p.* 330.)

4. **APPEAL AND ERROR.** General contractor held not entitled to complain of invited error whereby subcontractor was not made a party.

General highway contractor and surety cannot complain that certain claimants did not reduce their claims against the subcontractor to judgment, or liquidate them in some way, where the general contractor filed a bill and asked and obtained an order of court requiring all those parties with claims against the subcontractor in question to come into the cause and have their claims ascertained, and this relief was granted though the subcontractor was not a party thereto, and if it was error to consider the matters without the presence of the subcontractor it was an error which the general contractor invited. (*Post, pp.* 330, 331.)

5. **HIGHWAYS.** General contractor and surety not liable for services of foreman of construction work undertaken by subcontractor.

Under Acts 1917, chapter 74 section 6, providing that contractor and his surety shall be liable to "all laborers and other employees working for him, his subcontractors, or his agents," general contractor and surety were not liable for services of a foreman of construction work undertaken by subcontractor, his duties being to look after the men and see that their work was done in proper time and in a proper way. (*Post, pp.* 331-333.)

Acts cited and construed: Acts 1917, ch. 74, sec. 6.
Case cited and distinguished: Harris v. Marable, 138 Tenn., 676.

6. **HIGHWAYS.** Contractor and surety liable for coal used in rock-crusher engine employed by subcontractor.

Highway contractor and surety were liable for coal used in rock-crusher engine employed by subcontractor under Acts 1917, chapter 74. (*Post, p.* 333.)

Case cited and approved: Pittsburg Coal Co. v. So. Asphalt & Const. Co., 138 Tenn., 154.

.. **LICENSES.** Dealer supplying coal held entitled to recover though it had not paid privilege tax.

A merchant having a large store was entitled to recover for coal furnished highway subcontractor, though privilege tax as coal dealer had not been paid, it appearing that the coal was ordered

Southern Const. Co. v. Halliburton.

as a matter of accommodation for the subcontractor, without the intention of making a profit upon it, and it is immaterial that other sales of coal by the merchant may have been illegal under Acts 1917, chapter 74. (*Post, pp.* 333, 334.

8. **HIGHWAYS.** Claimant not entitled to recover from general contractor and surety for lumber furnished.

A company supplying lumber used for rock beds to highway subcontractor was not entitled to recover from general contractor and surety in the absence of a showing that the lumber was consumed in such use, or whether it could be used again under Acts 1917, chapter 74. (*Post, pp.* 334, 335.)

Cases cited and approved: Carter County v. Oliver Hill Construction Co., 143 Tenn., 649; Cass v. Smith, 146 Tenn., 218; Conn. v. Walker Const. Co., 131 Tenn., 445.

9. **HIGHWAYS.** General contractor and surety liable for services with director in grading.

Where it was necessary to do some grading upon part of a road let to subcontractor, and the latter employed a tractor at $2 per hour to pull a grader, two men being necessary to operate the machinery, the persons furnishing the tractor were entitled to recover from the general contractor and his surety the $2 per hour, and were not limited to sixty cents per hour for individual work, their services being more valuable and efficient by reason of their ownership of a mechanical contrivance belonging to them, under Acts 1917, chapter 74, section 6. (*Post, pp.* 335, 336.)

10. **PAYMENT.** Application of payments by subcontractor on open account as regards liability of general contractor and surety.

Where claimant had an open account against highway subcontractor, some items of which were valid demands against the general contractor and his surety, and subcontractor made part payment without application by either party to any particular item, the court properly applied such payments to the oldest items and not to items valid against the general contractor, as against the ob-

jection that the general contractor stood in the attitude of a surety for his subcontractor and should have the benefit of the old doctrine of the civil law to the effect that when the court makes an application of a payment by a debtor owing several debts to the same creditor, the application should be made to that debt for which the debtor has given a personal surety, under Acts 1917, chapter 74. (*Post, pp.* 336-338.)

Cases cited and approved: Bussey v. Grant's Adm'r, 29 Tenn., 238, Blackmore v. Granbery, 98 Tenn., 277; Lippman v. Boals, 84 Tenn., 284.

11. **INTEREST.** Right to interest is statutory; discretion of court in allowing.

Interest as a matter of right is purely statutory, unknown to the common law, and its positive allowance must be confined to those obligations and demands specified and enumerated in statutory provisions, and in cases not so included it remains, as at common law, a matter of discretion in the jury or chancellor to be allowed or not, according to the facts presented. (*Post, pp.* 338, 339.)

12. **HIGHWAYS.** Allowance of interest on claims against general contractor and surety discretionary.

In proceedings against general highway contractor and surety by claimants against subcontractors, it cannot be said that there was error in allowing interest on the claims only from the date of the chancellor's decree, allowance of interest being a matter of discretion under Acts 1917, chapter 74. (*Post, pp.* 338, 339.)

Case cited and distinguished: Tenn., Fertilizer Co. v. International Agricultural Corp., 146 Tenn., 451.

13. **HIGHWAYS.** Claims against subcontractor held properly disallowed against general contractor and surety.

Parties furnishing grease, gasoline, and minor repairs to highway subcontractor were not entitled to recover from the general contractor and surety where subcontractor had his own automobile in which he rode around over the work and elsewhere and a con-

tractor's outfit belonging to it and not consumable in the work, and it not appearing from the proof for what purpose these materials were sold or to be used under Acts 1917, chapter 74. (*Post*, p. 339.)

14. **HIGHWAYS.** Contractor and surety not liable for rent of camp site where subcontractor installed claimants' outfit.

Under Acts 1917, chapter 74, general highway contractor and surety were not liable for rent of a camp site where a subcontractor installed claimants' teaming outfit for a time, location for a camp site not being material furnished. (*Post*, p. 339.)

Case cited and approved: Carter County v. Oliver Hill Construction Co., 143 Tenn., 649.

15. **HIGHWAYS.** Contractor and surety not liable for torts of subcontractor.

Under Acts 1917, chapter 74, contractor and surety were not liable for damages for injuries to teaming outfit employed by subcontractor resulting from blasting by the subcontractor, not being liable for the torts of the subcontractor. (*Post*, p. 340.)

16. **HIGHWAYS.** Contractor and surety not liable for rock furnished subcontractor free of charge.

Highway contractor and surety were not liable for rock furnished to subcontractor and used in the work, where it appeared that subcontractor had contract with claimant under the terms of which the rock was given to the subcontractor free of charge, notwithstanding the subcontractor breached its contract in other particulars and is liable for damages under Acts 1917, chapter 74. (*Post*, p, 340.)

17. **HIGHWAYS.** Cost accountant, commissary clerk, and superintendant of subcontractors of subcontractor cannot recover from general contractor and surety.

Cost accountant, commissary clerk, and superintendent of entire subcontractors of a highway subcontractor were not such laborers or employees as were entitled to recover arrearages of salary due

them from the general contractor and surety, under Acts 1917, chapter 74, section 6. (*Post, pp.* 340, 341.)

18. **HIGHWAYS. Contractor and surety not liable for use of automobile by superintendent of subcontractors of subcontractor.**

Highway contractor and surety were not liable for use of an automobile by the superintendent of the entire subcontractors of a subcontractor under Acts 1917, chapter 74, the expense of the automobile being an expense of superintendence. (*Post, pp.* 340, 341.)

Cases cited and approved: Thompson v. Baxter, 92 Tenn., 305; McDonald v. Railroad, 93 Tenn., 281.

19. **HIGHWAYS. Contractor and surety not liable to subcontractors of subcontractor.**

Highway contractor and surety are not liable for work done by subcontractors of subcontractor, under Acts 1917, chapter 74, section 6. (*Post, p.* 341.)

Cases cited and approved: Stone Co. v. Board of Publication, 91 Tenn., 200; Lowenstein v. Reynolds, 92 Tenn., 543.

20. **HIGHWAYS. Contractor and surety not liable for food furnished laborers of subcontractor.**

Under Acts 1917, chapter 74, highway contractor and surety are not liable for groceries furnished subcontractor and used by the latter in camps where his laborers were fed. (*Post, p.* 342.)

Case cited and approved: Brogan v. National Surety Co., 246 U. S., 261.

21. **HIGHWAYS. Judgment creditor of subcontractor held entitled to interest as against general contractor and surety.**

Claimant obtaining a judgment against highway subcontractor was entitled to interest on his judgment as against the general contractor and his surety, under Acts 1917, chapter 74, in view of Thompson-Shannon Code, section 3497. (*Post, pp.* 342, 343.)

Code cited and construed: Sec. 3497 (T.-S.).

FROM HAWKINS.

Appeal from the Chancery Court of Hawkins County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. JOHN JENNINGS, JR., Chancellor.

SMITH, WORD & ANDERSON, for appellants.

PHILLIPS & HALE, C. W. MARGRAVES and H. E. PORTRUM, for appellees.

MR. CHIEF JUSTICE GREEN, delivered the opinion of the Court.

The Southern Construction Company entered into a contract with the state highway department for building certain roads in east Tennessee. A part of this work was sublet by the Southern Construction Company to Halliburton, another part to Baird, and another part to the Crump Construction Company. There are presented in these consolidated causes in this court various questions as to the liability of the Southern Construction Company and its surety for debts incurred by the aforesaid sub-contractors—whether such debts are of a character to render the general contractor and its surety liable, under our Statutes, for their payment.

The cause is before us on petitions for *certiorari* filed by the general contractor and its surety to the decree of the court of civil appeals, and upon petitions for *certiorari* filed by several of the claimants. We shall first dispose of the petition of the general contractor and its surety.

It is insisted by the general contractor and its surety that a number of the claims for which they were held

liable should have been dismissed as against them, because the claimants did not give to the general contractor or the officials notice of their claims within thirty days after completion of the contract as required by chapter 182 of the Acts of 1899, Thompson's-Shannon's Code; section 1135a et seq. The lower courts were of opinion that the provision as to notice contained in chapter 182 of the Acts of 1899, was impliedly repealed by chapter 74 of the Acts of 1917 regulating the construction of state highways.

An inspection of the contract entered into between the state highway department and the general contractor and its surety, indicates that the parties contracted with both statutes in mind. This, as we understood, was conceded on argument and it will, therefore, not be necessary to here review the terms of the contract, but only to consider the two statutes and to determine the present state of the law upon the matter in controversy.

To make a clearer statement we set out in parallel columns chapter 182 of the Acts of 1899, and the material provisions of chapter 74 of the Acts of 1917, the earlier act being in the first column, and the excerpt from the latter act in the second column:

"Hereafter no contract shall be let for any public work in this State, by any city, county or state authority, until the contractor shall first execute a good and solvent bond to the effect that he will pay for all the materials and labor used in said contract, in lawful money of the United

"All contractors with whom contracts are made by the Department shall enter into good and solvent surety bond in an amount fixed by the department, conditioned upon the full and faithful performance of every part and stipulation of the contract, especially the payment for all ma-

States. The bond to be given under this section shall be for one-half of the contract price on all contract of two thousand dollars, or under; one-half of the first two thousand dollars, and thirty-five per cent. of all over that amount on all contracts between two thousand dollars and five sand dollars; and one-half of the first two thousand dollars, thirty-five per cent. on the next three thousand dollars, and twenty-five per cent. on the balance on all contracts over five thousand dollars. Where advertisement is made the condition of the bond shall be stated in the advertisement; provided, that this act shall not apply to contracts under $100. . . . .

"Any laborer or furnisher of material may bring an action on such bond, and make recovery in his own name, upon giving security or taking the oath prescribed for poor persons as provided by law, and in the event of such suit, the city, county or State shall not be liable for any costs accruing thereunder. . . .

"If any public officer, whose duty it is to let or award contracts, shall let or award any contract without requiring bond for payment of labor and material, terials purchased and for all labor employed in the contemplated work. This bond must be approved by the department and filed with its records. The contract shall provide that the work executed thereunder shall be subject to the inspection, approval, and acceptance of the state highway engineer or his assistant engineer acting on oath and under bond. Not more than ninety per cent. of the contract price shall be paid on any contract until it is completed and the work is accepted. Before final acceptance, the contractor must furnish evidence to satisfy the department that all the material used by him, his subcontractors, or his agents, has been fully paid for and all laborers and other employees working for him, his subcontractors, or his agents, have been fully paid. When this is done, full settlement may be made made with the contractor; but not until thirty days notice in some newspaper published in the county where the work is done, if there be a newspaper published there, and if not, in a newspaper in an adjoining county, that settlement is about to be made and notify all claimants to file notice of their claim with the secretary of the department. The secre-

in compliance with the provisions of section 1 hereof, such officer shall be guilty of a misdemeanor.

. . .

"The laborer or furnisher of materials, to secure advantage of this act, shall file with the public officer who has charge of the letting of any contract an itemized statement of the amount owed by the contractor for materials and labor used within thirty (30) days after the contract is completed."

tary of the department shall withhold a sufficient sum from the contract price due to pay all claims, including advertising, of which notice is filed with him, for a reasonable time to allow claimants to sue for and prove their claims against the contractor or his agent, in some court of competent jurisdiction."

The act of 1899 relates to all public contracts. The act of 1917 only relates to highway contracts. It is apparent, therefore, that no general repeal of the act of 1899 is accomplished by the act of 1917. Neither do we think the act of 1899 is totally repealed, or suspended, as to highway contracts. Certain provisions of the earlier act, however, including the provisions as to notice and responsibility for the debts of subcontractors, are impliedly repealed. There is an irreconcilable conflict between the provisions of the two statutes in these two particulars, and the provisions of the later act must prevail.

Under the act of 1899 there is no liability, on the bond required, for labor and materials employed by subcontractors. *Templeton* v. *Nipper,* 107 Tenn., 548, 64 S. W., 889.

Under the act of 1917, the general contractor and his surety are bound for all materials purchased and labor employed in the work. The act further provides that performance of the contract shall not be finally accepted until the general contractor has satisfied the department that

all material "used by him, his subcontractors, or his agents" has been paid for, and until "all laborers and other employees working for him, his subcontractors, or his agents" have been paid. That is to say, the contract shall not be treated as performed until these claims have been paid. Payment of such claims is made a condition of the contract.

Under the act of 1899, it is perhaps the duty of the officials having in charge a public contract to delay final payment upon completion of the contract for thirty days to give laborers and materialmen an opportunity for filing notice of their claims. After the expiration of said thirty days, such officials are free to settle with the contractor. Under the act of 1917, though, the highway department is forbidden to make final settlement until it advertises its intention for thirty days, and gives an opportunity to claimants for labor and material to file notice of their claims, and until it gives further time to such claimants to establish their claims in a court of competent jurisdiction. Under the former statute notice of the claim must be filed on the initiative and at the peril of the claimant within thirty days after the contract is completed. Under the later statute the public officers must take the initiative and advertise for such claims, and notice of such claims is not due to be filed until after such advertisement is made. It is impossible for the provisions of both acts to stand, as they undertake to regulate notice of claims for labor and material.

Although a later act may not cover the entire subject-matter of an earlier act, nor purport to provide a new system, if the later act is repugnant and irreconcilable on a particular point, it will operate as a repeal by implication to the extent of the repugnance and conflict. *Bailey*

v. *Drane*, 96 Tenn., 16, 33 S. W., 573; *Balden* v. *State*, 122 Tenn., 704, 127 S. W., 134.

So we must conclude that in the details noted (and there may be others) the act of 1917 effected a repeal by implication of the act of 1899. There was no general repeal of the act of 1899, even in its application to highway contracts.

The general contractor and the surety contend that certain of these claimants should be repelled, because they did not first reduce their claims against the subcontractor to judgment, or liquidate such claims in some way. The parties affected by this contention are claimants under the Crump Construction Company, which concern went into bankruptcy in Georgia. Neither the Crump Construction Company nor its trustee in bankruptcy were parties to the proceedings herein.

While such a defense might be good under some circumstances, it is not available here. The general contractor filed a bill in one of these consolidated causes entitled the Southern Construction Company against A. B. Rogan et al., and asked and obtained an order of court requiring all these parties with claims against the Crump Construction Company to come into that cause and have such claims therein ascertained. The Crump Construction Company was not made a party to this bill. We take the following from the prayer of the bill:

"The premises seen: Complainant prays:

"That those named as defendants in the caption of this bill be made such by the service of proper process, and that they be required to answer, but their answers on oath are waived; that they be enjoined from prosecuting the respective suits instituted by them, and that they be

Southern Const. Co. v. Halliburton.

enjoined from instituting or prosecuting any other or additional suits against this complainant; that all other parties claiming to be creditors of the Crump Construction Company, and claiming and alleging that this complainant · is liable for the payment of their said claims, be enjoined from instituting or prosecuting other or separate suits against this complainant on their said claims, but that they be required to come into this cause by proper petition and set up any indebtedness which they may have against the Crump Construction Company and which they claim is an obligation against your complainant."

It may be doubted if the general contractor could have chosen a more effectual method of waiving its right to make the contention noted. By this bill it asked that all these claims be litigated and determined in this suit which it had framed. This relief was obtained. In other words, the general contractor prayed the court to require all claimants against the Crump Construction Company to set up their claims in a suit to which Crump was not a party. The general contractor obtained this exact relief, which was granted at its instance. If it was error to consider such matters without the presence of the Crump Construction Company or its representative, it was an error which the general contractor invited. No such an error, committed under such circumstances, is available in the appellate court.

The general contractor and the surety next assign errors on several claims allowed against them in the court of civil appeals, and these we will consider in detail.

### E. M. MASSENGILL.

Massengill was a foreman of construction work undertaken by the subcontractor Baird. He had charge and

immediate control of a number of men, and it was his duty to oversee them and see that their work was properly executed.  He had been a superintendent of such work before he went with Baird.  He testified that he looked after the men and saw that their work was done by proper time and in a proper way.  The court of civil appeals held the general contractor and the surety liable for his services.

While there are some differences, the rights of laborers and materialmen to recourse against the general contractor and his surety, under the act of 1917, are similar to the rights of such parties to a lien under our mechanic's lien statutes.  The language of the act of 1917 and of the mechanic's lien statutes are quite similar.

Section 3450, Thompson's-Shannon's Code, provides for a lien in favor of "every journeyman or other person employed" by the contractor "to work on the building."

Section 6 of chapter 74 of the Acts of 1917 provides that the contractor and his surety shall be liable to "all laborers and other employees working for him, his subcontractors, or his agents."

We cannot see that the class of persons protected is broader under the one statute than under the other.  Both statutes were designed for protection of the same class of persons.  Liens were given under private contracts; recourse on a bond was given under public contracts.  Decisions, therefore, as to what persons are within the scope of one statute, are quite authoritative as to what persons should be included within the other statute.

In *Harris* v. *Marable*, 138 Tenn., 676, 200 S. W., 824, this court held that one employed by a contractor to superintend the laying of a concrete floor was not entitled to a lien.  The court said:

"It is not meant to be indicated that one who engages in the work of a laborer on a building is to be denied a lien merely because he may incidentally have supervision over other laborers in his crew; only that one who is employed primarily and customarily in work of superintendence for a principal contractor has not a lienable claim."

It does not appear from the proof that Massengill did the work of a laborer. According to his own testimony he did the work of superintendence.

There should be uniformity of decision in these matters, and, under the authority of *Harris* v. *Marable,* we think the court of civil appeals erred in holding the general contractor and its surety liable for Massengill's claim, and the decree of that court in this particular will be reversed.

CHURCH HILL SUPPLY COMPANY.

This claimant furnished to the Crump Construction Company a carload of coal for use in the rock-crusher engine employed by the Crump Construction Company in this work. Other things out of the way, the general contractor and its surety are liable for this claim, under *Pittsburg Coal Co.* v. *So. Asphalt & Const. Co.,* 138 Tenn., 154, 196 S. W., 490.

It is said, however, that the Church Hill Supply Company was a coal dealer and had not paid the privilege tax laid upon such dealers, and should accordingly be denied recovery. While there is some proof that the claimant did from time to time deal in coal, and that it had only taken out a general merchant's license, and no license as a coal dealer, nevertheless, we think the claimant is not in default with respect to the car of coal furnished the Crump

Construction Company. The proof tends to show that this car of coal was ordered as a matter of accommodation for the Crump Construction Company. The claimant had a large store, and the Crump Construction Company had been a good customer, and this car of coal was ordered without the intention of making a profit upon it. Although other sales of coal might have been illegal, this particular transaction was not illegal, because it was not undertaken as a coal dealer for profit, but merely as a favor. One or more illegal acts do not make all the acts of the party illegal. It is true that after this claimant failed to get its money for the car of coal from the Crump Construction Company, it thereafter sought to add to the price of the coal a commission of $25. This commission, however, has been abandoned and did not enter into the original transaction. We are, therefore, of opinion that the cost of the car of coal was properly allowed by the court of civil appeals.

That court also allowed the Church Hill Supply Company to recover from the general contractor for certain lumber furnished the Crump Construction Company. We think this was erroneous. All that appears about the lumber was that it was used for rock beds. The record does not show what rock beds are, whether the lumber is consumed in such a use or whether it can be used again. So far as the record shows, rock beds may be appliances that a road contractor can use in another job.

Returning to the analogy of our mechanic's lien statutes, we think that the material for which the general contractor and its surety are liable, under the Act of 1917, is material consumable in the use or intended to be consumed in the use. This court did not undertake to agree with all

the opinion of the chancellor which was quoted in *Carter County* v. *Oliver Hill Construction Co.,* 143 Tenn., 649, 228 S. W., 720, in which he indicated a view contrary to that just expressed. The act of 1917 provides for final acceptance of the contract when the Highway Department shall be satisfied that all "material used" by the contractor, "his subcontractors, or his agents, has been . . . paid for." It would be too broad a construction of this statute to fasten such a liability upon the general contractor and the surety for materials which the subcontractor purchased, which were not used up in the job, and remained the property of the subcontractor to be thereafter used by him in other work. Tools would, of course, fall under such a ruling as this. If materials were bought with the intention of using them in the job, but by chance they were not so used, then there might be liability. *Cass* v. *Smith,* 146 Tenn., 218, 240 S. W., 778. Unless, however, the material was consumed in the work or intended to be so consumed, it falls short of the protection of the act of 1917. This is in strict analogy to the holding of the court under our lien statutes. *Cohn* v. *Walker Const. Co.,* 131 Tenn., 445, 175 S. W., 536.

The court of civil appeals disallowed a claim of the Church Hill Supply Company for oil and automobile casings and tubes. We think there was no error in this. We have examined the proof and do not find sufficient evidence that these materials were used or intended to be used, properly speaking, about this work.

### D. Y. & C. E. MOREE.

It was necessary to do some grading upon that part of the road where let to the subcontractor Halliburton. The

Morrees owned a tractor. Halliburton employed them at $2 per hour to pull a grader with their tractor and grade the roadway. It required two men to operate the machinery. One of the Morees and a man paid by them operated it. The labor of the two men themselves, exclusive of the services of the tractor, is shown to have been reasonably worth thirty cents each per hour. They worked with the tractor sixty hours. The court of civil appeals allowed these claimants $2 an hour for sixty hours or $120. It is urged that they can only recover as against the original contractor and its surety as laborers, and that they are only entitled to sixty cents per hour for their individual work, not for $2 an hour, the value of their work with their tractor.

We think the court of civil appeals was right. These laborers owned a mechanical contrivance belonging to them, which they employed instead of picks and shovels. By reason of using their tractor their services were more valuable and efficient. They were laborers nevertheless, and such laborers are not deprived of their *status*, nor of a proper reward for their services, because they used their team or their tractor.

### R. M. ROGAN COMPANY.

This claimant had an open account against the Crump Construction Company running over several months and amounting to $1,396.19. Eight hundred and fifty dollars of this was for dynamite sold to the Crump Construction Company and used in this work, for which it is conceded the claimant has a valid demand against the original contractor and the surety. After the account had been running for some time, the Crump Construction Company

Southern Const. Co. v. Halliburton.

made a payment of $500. There was no application of this payment by either party to any particular item or items on the account. The court of civil appeals applied it to the oldest items, and this action is assigned for error.

The old doctrine of the "civil law" is invoked to the effect that, when the court makes an application of a payment by a debtor owing several debts to the same creditor, the application will be made to that debt for which the debtor has given a personal surety. The reason of this rule was that the debtor's honor was said to be more concerned in the payment of such a debt. This doctrine did not prevail at common law, but has been accepted in Tennessee to an extent. *Bussey* v. *Gant's Adm'r*, 29 Tenn. (10 Humph.), 238; *Blackmore* v. *Granbery*, 98 Tenn., 277, 39 S. W., 229.

The argument is that the general contractor by reason of the statute stands in the attitude of a surety for his subcontractor, and should therefore have the benefit of the rule to which we have referred. If the payment had been applied to the dynamite used by the Crump Construction Company in the road work, the general contractor would have been considerably relieved, since the other articles for which the Crump Construction Company owes this claimant are not things for which the general contractor and the surety can be held.

While the civil-law rule referred to has been approved in this State in the cases mentioned and in other cases, in all of them there were other circumstances which were likewise considered by the court in applying payments to secured debts. The doctrine grew up in the days when all sureties were personal sureties, when the surety was a pronounced favorite of a court of equity. We think the act

of 1917 inclined the favor of the law in a different direction. The laborer and the materialman are objects of special protection in matters such as the one before us. Such a policy of our law is plain in the statute. We think it would be extending the old doctrine to an extent never contemplated by any chancellor, if we applied it as invoked here. Neither the general contractor nor its surety, paid to assume the obligations and responsibilities of their contract, are entitled to make such demand.

The application of this payment to the oldest items of the account made by the court of civil appeals was in accord with *Lippman* v. *Boals,* 84 Tenn. (16 Lea), 284, and is approved.

### INTEREST.

The chancellor and the court of civil appeals allowed interest on the claims sustained against the general contractor and its surety from the date of the chancellor's decree. Several of the claimants take exception to this ruling of the lower courts, and insist that interest should be allowed them from an earlier period.

"Interest as a matter of right is purely statutory, unknown to the common law, . . . and its positive allowance must be confined to those obligations and demands specified and enumerated in statutory provisions. In cases not so included, it remains, as at common law, a matter of discretion in the jury, or chancellor, to be allowed or not, according to the facts presented." *Tenn. Fertilizer Co.* v. *International Agricultural Corp.,* 146 Tenn., 451, 473, 243 S. W., 81, 88.

The foregoing is the last expression of this court on the subject. We see no reason for interfering with the action

Southern Const. Co. v. Halliburton.

of the lower courts. The act of 1917 is a new statute, and the rights of the parties interested under such statute were more or less in doubt. The defenses interposed against these claims were not unreasonable, and there was no abuse of discretion below.

A number of claimants whose demands against the principal contractor and its surety were disallowed by the court of civil appeals have assigned error, and these claims we will briefly consider.

### BELLAMY & HARRELL.

These parties furnished some certain items consisting of grease, gasoline, and minor repairs to the Crump Construction Company. Crump had his own automobile in which he rode around over the work and elsewhere. The Crump Construction Company also had a contractor's outfit belonging to it not consumable in this work. It does not appear from the proof for what purpose these materials were used or sold to be used. The gasoline might have been used in Crump's personal travels as well as the grease and the other articles might have been used on the permanent outfit of the Crump Construction Company. There was no error in disallowing the claim against the original contractor and its surety.

### B. F. SMITH.

B. F. Smith was allowed to recover $1,398.97 mule feed under the authority of *Carter County* v. *Oliver Hill Construction Co.*, 143 Tenn., 649, 228 S. W., 720. He complains, however, that he was denied recovery from the original contractor and its surety for rent of a camp site where the Crump Construction Company installed its out-

fit for a time.  We think there was no error in this action.
It would be too wide a stretch of the language of the stat-
ute to hold that the location for a camp site was material
furnished.

Smith also complains that he was denied an allowance
against the principal contractor and the surety for $500
damages for injuries to his property resulting from blast-
ing by the Crump Construction Company.  There is noth-
ing in the statute which fixes liability on the original con-
tractor and the surety for the torts of a subcontractor.

Smith again complains that he was denied relief upon
his claim for certain rock furnished by him to the Crump
Construction Company and used in this work.  This claim
might be meritorious, but it is shown that Smith and the
Crump Construction Company had a contract under the
terms of which this rock was to be given to the Crump
Construction Company free of charge.  The Crump Con-
struction Company breached its contract in other par-
ticulars with Smith, and is liable to Smith for damages
no doubt.  This, however, does not make the principal
contractor and the surety liable to Smith for rock which
Crump got for nothing.

### CHARLES E. CROOK & W. M. CROOK.

Chas. E. Crook was the cost accountant and commissary
clerk employed by the Crump Construction Company.  W.
M. Crook was superintendent of the entire sub-contractors
of the Crump Construction Company.  These parties have
put in a claim against the general contractor and its
surety for arrearages of salary due them which the lower
courts disallowed, as we think proper.  Neither of these
claimants was such a laborer or employee as was intended

to be protected by the act of 1917.  *Thompson* v. *Baxter,*
92 Tenn., 305, 21 S. W., 668, 36 Am. St. Rep., 85; *McDonald* v. *Railroad,* 93 Tenn., 281, 24 S. W., 252, construing
our lien statutes.    W. M. Crook also seeks an allowance
for the use of an automobile which he owned and operated
while this work was in progress.   Whether or not such a
charge would be legitimate against the Crump Construction Company is a question we need not determine.   In any
case the expense of the automobile was an expense of
superintendence, and not chargeable against the principal
contractor and the surety.

### L. E. MOORE & J. E. JONES.

The  Crump  Construction  Company  sublet  portions
of their contract to these claimants and failed to pay them
for their work, and they sought relief against the original
contractor and its surety.   Such relief was denied them,
and we think the lower courts were right.

The act of 1917 does not protect a subcontractor of a
subcontractor any more than our lien statutes, and the
same reasoning which denies relief to the subcontractor
of a subcontractor claiming a lien denies relief to such a
claimant under the act of 1917.   See *Stone Co.* v. *Board of
Publication,* 91 Tenn., 200, 18 S. W., 406; *Lowenstein* v.
*Reynolds,* 92 Tenn., 543, 22 S. W., 210.

The act of 1917 makes the principal contractor and the
surety liable for all "material used by him [general contractor], his subcontractors, or his agents."   A subcontractor of a subcontractor is not the general contractor,
is not his subcontractor, is not his agent.   Such a party
is therefore without this statute.

### T. N. HOWE.

This claimant assigns error because the court of civil appeals disallowed his claim against the principal contractor and the surety for groceries furnished Halliburton and used by the latter in the camps where his laborers were fed. It is insisted that under the principle of *Carter County* v. *Oliver Hill Construction Co.,* supra, food for the laborers should be put on a plane with food for the mules owned by the contractor. It does not appear that it was absolutely necessary for Halliburton to have undertaken to feed his laborers himself. This may have been done for additional profit. The laborers might have boarded elsewhere. This work was not being done in a wilderness, as in *Brogan* v. *National Surety Co.,* 246 U. S., 261, 38 Sup. Ct., 250, 62 L. Ed., 705, L. R. A., 1918D, 776. Approved in *Carter Co.* v. *Oliver Hill Construction Co.,* supra. At any rate, as we said in *Cass* v. *Smith,* supra, we do not desire to extend the scope of *Carter Co.* v. *Oliver Hill Construction Co.*

Howe makes another assignment about being deprived of the benefit of a mortgage which he had on certain property of Halliburton's as a result of a decree of the court of civil appeals.

This assignment seems to be well taken. No answer is made to it, and it will be sustained.

### JOHN ROUSE.

This claimant obtained a judgment before a magistrate against Halliburton which was allowed as a proper claim against the original contractor by the court of civil appeals. He was not allowed, however, interest on his judg-

ment. The action of the lower courts in disallowing interest on this judgment seems to be erroneous. Thompson's-Shannon's Code, section 3497. This assignment of error will accordingly be sustained.

With the modifications indicated, the decree of the court of civil appeals will be affirmed, and these causes remanded to the chancery court of Hawkins county for further proceedings.