CONSOLIDATED ENGINEERING COMPANY *v.* WEDOW & MYERS INC., *et al.**

(*Knoxville,* September Term, 1926.)

Opinion filed October 9, 1926.

1. **RAILROADS.** **Lien of contractors, sub-contractors and furnishers of material, etc. Code 3570, sec. 3580. Furnisher of coal to sub-contractor for use in operating machinery employed in construction.**

Under Acts 1883, ch. 222, Shannon's Code, section 3570, providing for a lien on railroads in favor of contractors and laborers, upon construction, and other kindred purposes, or for the delivery of material for any of these purposes; Amended by Acts 1891, ch. 98, Shannon's Code, section 3580, so as to include sub-contractors, furnishers of material, etc., as fully as is provided in section 3570, will entitle the furnisher of coal to a sub-contractor used by him, in operation of steam shovels and other machinery employed in removing earth and rock in constructing a railroad, to a lien under this section, upon the administering of the affairs of sub-contracts as an insolvent corporation. (Post, p. 362.)

Acts cited: Acts 1883, ch. 220; Shannon's Code, sec. 3570; Acts 1917, ch. 74; Acts 1891, ch. 98; Shannon's Code, sec. 3580; Acts 1899, ch. 182; Shannon's Code, sec. 3546a4.

Cases cited: Bladen v. Railroad, 97 Tenn., 392; Cohn v. Construction Company, 131 Tenn., 445; Powder Company v. Railroad, 113 Tenn., 391; Luttrell v. Railroad, 119 Tenn., 492; Pittsburgh Coal Co. v. So. Asphalt & Const. Co., 138 Tenn., 154; Carter County v. Oliver Hill Const. Co., 143 Tenn., 650; Southern Construction Company v. Halliburton, 149 Tenn., 326; Hamblen Motor Co. v. Miller & Harle, 150 Tenn., 602.

*On right of material man to lien on railroad for feul consumed by machine used in the construction of road, see 22 R. C. L., 1067.

Cases cited and disapproved: Bon Air Coal and Air Co. v. Railroad Co., 4 App. Cas. 37.

2. **SAME. Same. Amendatory Statute of 1891.**

The Amendatory Statute was passed for the express purpose of extending to sub-contractors and furnishers of material the same lien that was provided in the original statute to persons contracting directly with the railroad company. (Post, p. 362.)

Citing: Nall v. R. R. Co., 112 Tenn., 144; Powder Co. v. R. R. Co., 113 Tenn., 391.

*Headnote 1. Railroads, 33 Cyc., p. 469 (Anno.).

---

### FROM HAMBLEN.

---

Appeal from Chancery Court of Hamblen County.— HON. T. L. STEWART, sitting by appointment and in place HON. E. R. TAYLOR, Chancellor.

LINDSAY, YOUNG & YOUNG and MCCANLESS, TAYLOR & BELL, for plaintiff appellants.

E. F. SMITH and R. M. HICKEY, for defendant appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The complainant entered into a contract with the defendant, Southern Railway Company, to furnish the labor and material and construct a single track railroad from Bulls Gap, Tennessee, to Leadvale, Tennessee, a distance of about seventeen miles. A portion of said work was sublet by complainant to defendant, Wedow & Myers, Incorporated.

Before completing their contract Wedow & Myers, Incorporated, before financially embarrassed, whereupon the original bill in this cause was filed to administer its affairs as an insolvent corporation, and the bill was duly sustained.

E. H. Stegall filed a petition and cross-bill in the cause asserting a lien against the property of the railway company due to the fact that he furnished Wedow & Myers, Incorporated, coal of the value of $724.85, which was used in the operation of its steam shovel and other machinery employed in removing the earth and rock in the construction of said roadway.

It is shown by the petition and cross-bill that defendant, Wedow & Myers, Incorporated, had a contract for grading the roadbed, and the excavation of earth and rock necessary for that purpose. That instead of using laborers to do this work with pick and shovel, this subcontractor used large shovels or scoops operated by steam produced by the use and consumption of the coal furnished by petitioner. That the power produced by petitioner's coal took the place and accomplished the same result as would have been accomplished by the laborers who would have been employed if the coal and the power produced by its use had not been used. The power furnished by the coal was used in the direct act of removing the earth and rock necessary to grade the roadbed. Its use was not remote.

The railway company demurred upon the ground that the coal so furnished was not material used in the construction of said roadway within the meaning of the statute pertaining to same.

The chancellor sustained the demurrer and petitioner Stegall has appealed to this court and assigns for error the action of the chancellor in sustaining the demurrer and dismissing his petition and cross-bill.

Chapter 220 of the Acts of 1883, Shannon's Code, section 3570, provides: "Where any railroad company contracts with any persons, for the grading of its roadway, the construction or repair of its culverts and bridges, the furnishing of crossties, the laying of its track, the erection of its depots, platforms, wood or water stations, section houses, machine shops, or other buildings, or for the delivery of material for any of these purposes, or for engineering or superintendence, there shall be a lien upon such railroad in favor of the person or persons with whom the railway company contracts for the performance of the work or the delivery of the material to the amount of the debt contracted therefor."

The foregoing statute was amended by chapter 98 of the Acts of 1891, Shannon's Code, section 3580, so as to include sub-contractors, the amendment being in the following language:

"Every subcontractor, laborer, materialman, or other person who performs any part of the work in grading any railroad company's roadway, or who constructs or aids in the construction or repairs of its culverts and bridges or who furnishes crossties or masonry or bridge timbers for the same, which is used in the building and construction of such railroad, its bridges and culverts, or who lays or aids in the laying of its track, building of its bridges, the erection of its depots, platforms, wood or water stations, section houses, machine shops, or other buildings, or for the delivery of material for any of

these purposes, or for any engineering or superintendence, or who performs any valuable service, manual or professional, by which any such railroad company receives a benefit, all and every such person, or persons shall have a lien on such railroad, its franchises and property, for the value of such work and labor done or material furnished or services rendered as hereinbefore set out and specified, in as full and ample a manner as is provided by law (section 3570) for persons contracting directly with such railroad company for any such work and labor done or material furnished.''

The amendatory statute was passed for the express purpose of extending to sub-contractors and furnishers of material the same lien that was provided in the original statute to persons contracting directly with the railroad company. *Nall* v. *Railroad,* 112 Tenn., 144; *Powder Co.* v. *Railroad,* 113 Tenn., 391.

Construing the foregoing statutes this court, in *Bladen* v. *Railroad,* 97 Tenn., 392, held that a bookkeeper for a railroad bridge contractor and the cook and the cook's assistant employed by him were within the purvew of the act, and were decreed liens on the railroad property for their wages. The court said:

''Under the broad provisions of the Act, we are of opinon that the Court of Chancery Appeals is correct in its conclusion that these persons are entitled to their liens. They do perform valuable service, manual and professional, from which the railroad company receives a benefit, and are necessary parts of the bridge force constructing the bridge, and were engaged alone in this work.''

In *Cohn* v. *Construction Company,* 131 Tenn., 445, a lien was decreed against the railroad in favor of a furnisher of timber used in making forms for the pouring of concrete.

In *Powder Company* v. *Railroad,* supra, a lien was decreed against the railroad in favor of one who furnished powder for use in blasting rock in the construction of a tunnel. The court said:

"For the railroad it is insisted that the term 'materials' as used in these Acts, means something which enters into the construction of the roadway and forms a part of it, and cannot be held to apply to such material as is consumed in constructing the roadway, and, being consumed, it constitutes no part of the roadbed or roadway after it is constructed.

"We are of opinion that the General Assembly intended to give persons who furnished materials for grading the roadbed a lien, as well as those who furnished such material as was used in the superstructure placed upon the roadbed after it was graded, such as crossties, culverts, etc.

"The fact that the materials were consumed in the use, and were thus destroyed in the construction, we think, does not deprive the furnisher of his lien. The consumption of explosives is the only use that can be made of them, and their consumption is absolutely necessary to the excavation of tunnels through rock. In other words, they are material which enter into the building and grading of the road as much so as trestles, bridges and culverts contain materials which are necessary to the grading of the road at such places as require trestles, bridges, and culverts."

In *Luttrell* v. *Railroad*, 119 Tenn., 492, the furnisher of dynamite, fuse, blasting wire, wire fuse, and certain articles of hardware, which became a part of the permanent structure, was decreed a lien.

Chapter 182 of the Acts of 1899, Shannon's Code, section 3546a4, contains the following provision:

"No contract shall be let for any public work in this state by any city, county, or state authority, until the contractor shall first execute a good and solvent bond to the effect that he will pay for all the materials and labor in said contract, in lawful money of the United States."

Construing that statute this court held in *Pittsburg Coal Co.* v. *So. Asphalt & Const. Co.*, 138 Tenn., 154, that coal used in the machinery doing excavating work was material for which the furnisher could recover on the bond. The court said:

"We are of opinion that the coal furnished to the contractor under the circumstances stipulated by counsel is material used in the performance of the contract within the meaning of this act. If the excavation done in the performance of the contract were with pick and shovel in the hands of laborers it would have fallen within the express terms of the act because the act requires that the bond shall cover 'labor used in said contract.' But the contractor and the city saw proper to use modern appliances for their own benefit instead of day labor in making the excavations, hoisting, and the like. The coal that furnished the power by which the machinery was operated was as much material used in the contract as the labor of men for which it was substituted. The fact that modern machinery enables contractors to perform their contracts with greater facility than the old method

of hand labor should not deprive those who furnish materials to the contractor to be used in the performance of the contract of the protection of the law. The machinery, appliances and things used by which modern contracts are performed are different from those with which they worked at an earlier day, and it is likely that as time advances improvements will be made, and other appliances will come into common use which will supersede those now employed by contractors. The statute under consideration was passed for the protection of laborers and furnishers of material on public works, and the inquiry should not be limited to the method by which the contract is performed.''

Construing the same statute this court, in *Carter County* v. *Oliver Hill Const. Co.*, 143 Tenn., 650, held that hay, corn and oats fed to stock used in excavation work was material for which the furnisher could recover on the bond.

Chapter 74 of the Acts of 1917 provides that: ''All contractors with whom contracts are made by the Department (Highway) shall enter into good and solvent surety bond in an amount fixed by the Department, conditioned upon the full and faithful performance of every part and stipulation of the contract, especially the payment for all materials purchased and for all labor employed in the contemplated work.''

In construing the foregoing statute this court, in *Southern Const. Co.* v. *Halliburton,* 149 Tenn., 326, pointed out the similarity between the language of the statute and that contained in the Act of 1899 and the mechanic's lien statutes, section 3440 of Shannon's Code, and de-

creed a recovery for coal used in the rock crusher engine.

In *Hamblen Motor Company* v. *Miller & Harle,* 150 Tenn., 602, the court had under consideration the Act of 1917, and held that gasoline used in generating power in trucks devoted to hauling rock from the quarries to the highway was material for which the furnisher could recover on the bond.

Adverting to the opinion in *Southern Const. Co.* v. *Halliburton,* supra, this court, speaking through Chief Justice GREEN, with respect to the similarity of the language employed in the Act of 1917 and our mechanic's lien statutes, said:

"We cannot see that the class of persons protected is broader under the one statute than under the other. Both statutes were designed for protection of the same class of persons. Liens were given under private contracts; recourse on a bond was given under public contracts. Decisions, therefore, as to what persons are within the scope of one statute, are quite authoritative as to what persons should be included within the other statute."

Chief Justice GREEN had previously referred to the similarity between the Act of 1917 and that of 1899.

This similarity likewise exists with respect to the language used in the Act of 1883, as amended by the Act of 1891. They all embrace material furnished for use in the particular construction work designated. They have a common object, viz: the protection of furnishers of material used in the work. The purpose of all are the same while the remedies provided are different.

In case of public improvements, since no lien can attach to the property, a bond is substituted in place of the lien; that is the most essential difference.

It would violate the spirit of these various acts and be illogical to say that coal furnished for use in a steam shovel employed in excavating a highway; or in excavating a street in a city for sewer purposes; or in excacating a lot for an individual was material consumed in the excavation, but that coal used in such machinery for excavating a bed for a railroad was not material.

Neither can it be said that the Act of 1883-1891 is limited to labor and material directly incorporated into the work. The language used does not warrant such a limitation, unless it be with respect to persons furnishing crossties, masonry or bridge timber.

Such a construction is negatived by previous decisions of this court holding that a bookkeeper, cook and assistant cook come within the purview of the act, and that powder, fuses and timber for concrete forms are material, although not directly incorporated into the work.

As pointed out in *Southern Const. Co.* v. *Halliburton, supra,* the holding of the court should be uniform in such cases, especially since the various acts have a common object or purpose and since they employ similar language with respect to the furnishing of material.

Our conclusion is that the petitioner Stegall is entitled to the relief sought. As previously stated, the learned chancellor took a contrary view upon the authority of *Bon Air Coal & Iron Co.* v. *Railroad Co.,* 4 App. Cas., 37. In that case a petition for writ of *certiorari* was denied by this court, but upon what ground does not appear. That case was decided thirteen years ago and has never

been followed by this court, or referred to in any of its decisions. In so far as it conflicts with out decision in this cause we are unable to give it our approval.

The chancellor was probably likewise misled by some expressions contained in the opinion of *Pittsburg Coal Co. v. So. Asphalt & Const. Co., supra,* which were not necessary to the decision in that case. The learned justice rendering the opinion observed that foreign authorities relied upon involved mechanic's lien statutes, and that such statutes and the Act of 1883-1891 were essentially different from the one under consideration. He did not make a comparison or undertake to point out this dissimilarity. They are unlike in some respects, and especially with regard to the remedy afforded the laborer or the furnisher of material, but as to what constitutes material our conclusion is that they are quite similar.

A decree may be drawn in conformity with this opinion.