INRYCO, INC., Plaintiff-Appellee,

v.

EATHERLY CONSTRUCTION COMPANY and Safeco Insurance Company of America, Defendants-Appellants.

No. 85–5640.

United States Court of Appeals, Sixth Circuit.

Argued April 8, 1986.
Decided June 19, 1986.

Angus Gillis, III (argued), Shulman, Leroy and Bennett, Nashville, Tenn., W. Wayne LeRoy, for defendants-appellants.

Elizabeth Penn Payne (argued), Vaughan, Phears, Roach, Davis & Murphy, Atlanta, Ga., C. Eric Stevens, Trabue, Sturdivant & Dewitt, Nashville, Tenn., for plaintiff-appellee.

Before KRUPANSKY and GUY, Circuit Judges, and HOLSCHUH, District Judge.*

* Honorable John D. Holschuh, United States District Court, Southern District of Ohio, sitting by designation.

RALPH B. GUY, Jr., Circuit Judge.

Defendants, Eatherly Construction Company (Eatherly) and Safeco Insurance Company of America (Safeco), appeal from a grant of summary judgment to plaintiff, Inryco, Inc. (Inryco), after the filing by the parties of cross-motions for summary judgment. At issue was whether Inryco, as a supplier of materials to a highway project on which Eatherly was the general contractor, was within the ambit of protection provided under performance and payment bonds on which Safeco was the surety and which were given by Eatherly to the State of Tennessee.

Eatherly was awarded a contract by the Department of Transportation (DOT) of the State of Tennessee for a highway project in Putnam County, Tennessee. Part of the contract requirements involved the installation of sound barriers along certain portions of the highway. On October 15, 1981, Hall Metal Products (Hall) submitted an offer to Eatherly to supply the sound barrier materials. Any such sale was subject to DOT approval of shop drawings for the barriers, which drawings were to be prepared by Hall. The necessary approval was obtained, and Hall and Eatherly executed a contract.

Hall was a dealer for Inryco since November of 1980 and submitted an order to Inryco in connection with the Putnam County project for such items as wall panels, flashing, screws and clamps. Other components for the sound barrier were also ordered from suppliers other than Inryco. In February, 1982, Inryco fabricated to specifications provided by Hall the metal panels ordered. Due to project delays, the panels were not shipped until April of 1982, having been retained in Inryco's marshalling yard in the interim. The materials were shipped directly to the job site and consigned to either Eatherly or Hall. They were accepted at the job site by Eatherly employees. Inryco invoiced these materials to Hall in June and July of 1982. For

reasons not made clear by the record and unknown to Inryco, Hall and Eatherly billed DOT for this work before Inryco had even fabricated the panels. DOT paid Eatherly and it in turn paid Hall.[1] At the time Eatherly paid Hall, it made no inquiry as to whether Hall had paid Inryco, nor did it seek any lien waivers or releases. Although Hall paid Inryco in part, it failed, due to Hall's financial difficulties, to pay Inryco $58,991.88.[2] Inryco instituted this litigation against Eatherly and its surety, Safeco, to collect the unpaid balance. Eatherly and Safeco defended on the basis of Inryco not being a protected party under the performance and payment bond.[3]

The contract of surety executed between Eatherly and Safeco in favor of DOT provides that:

> In addition to the special terms and conditions hereinafter set out, it is understood and agreed by the contractor and his surety that all the terms, conditions and obligations contained in Chapter 4 of Title 12 of T.C.A. and in Section 54–519 et seq. of T.C.A.[4], relating to bonds required of contractors on highways and public works, constitute a part of this contract bond and obligation as fully as if copied herein.[5]

(App. at 11.) Tennessee Code Annotated § 12–4–201 provides in pertinent part:

**Contractors bond to pay for labor and materials.**—No contract shall be let for *any public work* in this state, by any city, county or state authority, until the contractor shall have first executed a good and solvent bond to the effect that he will pay for all the labor and materials used by said contractor, or any immediate or remote subcontractor under him, in said contract, in lawful money of the United States.

(Emphasis added.) Tennessee Code Annotated § 54–5–119 provides in pertinent part:

**Contractors must give bonds—Actions—Limitations.**—All contractors with whom contracts are made by the bureau [DOT] shall enter into good and solvent surety bond in an amount fixed by the bureau, conditioned that acceptance or service of process upon the director shall be service on them as their agent duly authorized to that end, and for the full and faithful performance of every part and stipulation of the contract, especially the payment for all materials purchased and for all labor employed in the contemplated work.

Also relevant, although not specifically referenced in the surety bond, is a companion section of the Tennessee Code which reads in pertinent part:

> (2) The contractor shall furnish evidence to satisfy the department [DOT] that all the material used by him, his subcontractors or his agents has been fully paid for and all laborers and other employees working for him, his subcontractors, or his agents have been fully paid.

Tenn.Code Ann. § 54–5–122 (1984).

In order to determine whether these bond provisions afford protection to Inryco, it is necessary to determine the interrelationship of these statutory provisions as

---

1. Both payments were less a 7 percent retainage. Hall received approximately $220,409.54 as its payment.

2. Inryco has an uncollectible judgment against Hall for this balance.

3. The defendants also rely on a provision of the Uniform Commercial Code found in Tenn.Code Ann. § 47–2–403(2) which provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entrustor to a buyer in the ordinary course of business." As did Judge Wiseman, we find this provision inapplicable to this dispute. The issue here is not the passing of title about which there is no dispute, but the issue of payment under specific bond provisions.

4. Chapter 4 of Title 12, Tenn.Code Ann., is now Tenn.Code Ann. § 12–4–201. Section 54–519, et seq. of Tenn.Code Ann. is now Tenn.Code Ann. § 54–5–119. The current reference, rather than that contained in the surety contract, will be used herein.

5. It should be noted that this language is in the surety contract because it is a requirement of the State of Tennessee and was not incorporated at the request of either Safeco or Eatherly.

well as the nature of the relationship among Inryco, Hall, and Eatherly.

█ It is clear that the two main purposes of the requirements that a contractor provide a payment and performance bond are to protect the State of Tennessee from liability and to provide protection for those who furnish labor and materials to public construction projects since they have no lien rights against such public construction. *Scott v. Travelers Indemnity Co.*, 215 Tenn. 173, 384 S.W.2d 38 (1964). *See also Wal-Board Supply Co., Inc. v. Daniels,* 629 S.W.2d 686 (Tenn.App.1981).

Since public surety bond requirements are intended to afford those working in the public sector similar protection as that afforded by the Mechanics Lien Law to those working in the private sector, it is not unusual that the Tennessee courts have stated that:

> The mechanics' lien statutes ... and the statutes requiring the execution of bonds by persons engaged in public works have been found to contain similar provisions with respect to the protection afforded furnishers of materials, and it has been clearly intimated by this court that a uniform construction and application of the several statutes in this regard is both possible and desirable.

*Nicks v. W.C. Baird & Co.,* 165 Tenn. 89, 52 S.W.2d 147 (1932) (citations omitted).

Although seeking a uniform construction and application, the Tennessee courts have recognized that the Tennessee legislature has elected to address bonds on public works projects in general (Tenn.Code Ann. § 12–4–201) and bonds on highway projects (Tenn.Code Ann. § 54–5–119) in different statutory sections. To the degree that these sections are not in harmony the Supreme Court of Tennessee stated in *Pan American Petroleum Corp. v. McQuary,* 164 Tenn. 646, 51 S.W.2d 854 (1932):

> We think a proper construction of the statutes is that the Act of 1899 and the Act of 1925 relate to contracts for public works generally. [Predecessors to Tenn.

Code Ann. § 12–4–201] That the Act of 1917 and the Act of 1929 relate to highway contracts only [predecessor to §§ 54–5–119 and 54–5–122]. Insofar as the provisions of the Acts of 1899 and 1925 ... and the provisions of the Acts of 1917 and 1929 ... are out of harmony, the provisions of the two Acts last mentioned control the rights of all parties to highway contracts.

51 S.W.2d at 855. *See also Thompson & Green Machine Co. v. Travelers Indemnity Co.,* 57 Tenn.App. 592, 421 S.W.2d 643 (1967), and *Southern Construction Co. v. Halliburton,* 149 Tenn. 319, 258 S.W. 409 (1923).

Defendants reason from *Pan American* and *Southern Construction* that, although the language in the surety bond at issue here references statutory sections dealing with both public works bonds and highway bonds, the courts of Tennessee have ruled that where the project is a highway project those sections relating to highway bonds control. The court below did not agree and held that Inryco can look to both the public works bond section and the highway bond sections for protection since both are incorporated in the surety contract. The trial court then went on to hold that under either bond provision Inryco could collect because both are "intended to protect those parties that provide a 'direct contribution' to the construction project" (App. 5). In reaching this conclusion, the court read § 12–4–201 of the highway bond statute as if it read "remote *material/supplier* subcontractor" rather than "remote subcontractor" without any explanation for such a reading. The trial court further introduced the concept of "direct contribution" as if it were a term of art, although neither the bond statute nor the Tennessee courts reference this term.

Whether the contract language extends the protection of both the general public works bond provisions and the highway bond provisions to Inryco is a close question.[6] It is one we need not resolve, how-

---

**6.** The better view is probably that suggested by

Judge Wiseman that since the State of Tennes-

ever, since we conclude that Inryco is not protected under either statute.

■ Under the highway statutes, it is required that there be a guarantee that material used by the contractor (Eatherly) or its "subcontractors ... be fully paid for...." The general public works statute requires that the contractor (Eatherly) guarantee payment for all "materials used by ... any immediate or remote subcontractor." Thus, if Hall is a "subcontractor" of Eatherly and Inryco is a material supplier to a subcontractor (Hall) or a "remote subcontractor in its own right," then Inryco is covered by the bond provisions.[7] We conclude that Hall is not a subcontractor and that Inryco is not a remote subcontractor.[8] In reaching this conclusion, we are persuaded by the logic of the Tennessee courts that these bonds statutes attempt to do for those dealing with public entities what the Mechanics' Lien Law does for those dealing with private entities and should receive a uniform construction. *Nicks, supra.* Therefore, we look to the Tennessee statutes governing mechanics' and materialmen's liens.

Tennessee Code Annotated § 66–11–101 provides definitions of all the terms relevant to the resolution of this dispute. In § 66–11–101(10), " '[m]aterialman' or 'furnisher' means any person who, under contract, furnishes material to the owner, contractor, or subcontractor of any degree, on the site of the improvement or for direct delivery to the site of the improvement, or who specially fabricates materials for the improvement, and who performs no labor in the installation thereof." Section 66–11–101(16) defines "subcontractor" as "a person other than a materialman or laborer who enters into a contract with a contractor for the performance of any part of the contractor's contract, or who enters into a contract with a subcontractor as above defined, and in any degree, for the performance of any part of such subcontractor's contract."

Since the definition of "materialman" covers those who have *contracts* for the furnishing of material even if that material is specially fabricated, it is clear that it covers precisely the part played by both Hall and Inryco. This is made even clearer since the definition goes on to state that they (materialmen) perform "no labor in the installation thereof." Although both Hall and Inryco alleged that they did special fabricating, neither played any role in the installation of the allegedly specially fabricated materials which were merely delivered to the job site and then installed by Eatherly employees.[9]

Similarly, since the definition of "subcontractor" by its express terms excludes those who meet the definition of "materialmen," neither Hall nor Inryco could be a "subcontractor." Furthermore, they did not enter into a contract with Eatherly for the "performance of any part of the contractor's contract" but, rather, only for furnishing the materials to perform a part of the contractor's contract, albeit a distinct and identifiable part.

It goes without saying that if Inryco could not meet the definition of "subcon-

---

see requires the reference to both statutes in surety contracts of this nature, the protections of both should be available. The judicial interpretation of these sections only holds that where they conflict, the highway statute controls in the case of highway projects. The fact that the reach of the sections is defined in different terminology is not in and of itself a conflict. The problem is complicated, however, by the fact that the contract provision that Tennessee requires is obviously an old one as evidenced by the fact that the statutory reference used is not the one currently in use. Thus, it is hard to discern whether we deal with historical accident or current-day intent.

7. *See, supra,* note 6.

8. Although the parties argued this issue of "subcontractor" in their summary judgment motions below, the trial court did not make any ruling on this issue.

9. Defendants deny that Inryco or Hall actually did "special fabricating." We do not need to resolve that issue because its only importance here is that, even if they did, it would not convert their role to that of "subcontractor."

tractor," it also could not meet any definition of "remote subcontractor." [10]

It appears that the trial court was greatly influenced in its decision by the fact that Eatherly knew or had reason to know that Inryco was, in fact, a supplier of materials. Although that does create an "equity" in favor of Inryco, we are dealing here with a matter of contract and statutory construction and, where Tennessee has provided definitions as clear as those with which we deal here, we must interpret both the contract and the statutes in keeping with those definitions.

The summary judgment in favor of plaintiff is REVERSED and the case is REMANDED for entry of summary judgment in favor of the defendants.

---

10. Tenn.Stat.Ann. § 66–11–102(a) sets forth who may claim a lien under Tennessee's Mechanics' and Materialmen's Liens Act in the following language:

> LIEN FOR WORK AND MATERIALS.—(a) There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, or repaired, or for fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or his agent, in favor of the contractor, mechanic, laborer, founder or machinist, who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or material, and in favor of all persons who do any portion of the work or furnish any portion of the materials for such building.

Although the statute references a lien existing in "favor of all persons who ... furnish any portion of the materials," this language has been interpreted to exclude those who supply materials to another materialman, since the former are without "special contract" with the owner as is required by the statutes. *Carolina Portland Cement Co. v. Hitt Lumber & Box Co.*, 141 Tenn. 210, 208 S.W. 336 (1918). Thus, the proposition advanced at oral argument, that if analogy is made to the Mechanics' Lien Act, under that Act Inryco would have a lien, is not supported by Tennessee case law.